591 So.2d 1091 (1992)
Jerry GRIMES and wife, Laura Grimes and Destin Piling and Excavation, Inc., a Florida Corporation, Appellants,
v.
WALTON COUNTY, a political subdivision of the State of Florida, the Walton County Board of Adjustment, an administrative agency of Walton County, and Maris Atchison, Aubrey Brannon, Roy Cassidy, Roy Godwin, Toby Rushing, Lloyd Ward, and Elmer Williams, all individuals who are members of the Walton County Board of Adjustments, Appellees, and
Jack Hanna, Marilyn Hanna, Randy O'Connor, Dawn O'Connor, Christie C. Johnson, Jerome P. Johnson, Claire Lucas, Harold Lucas, A.B. Sherling, Rebecca Sherling, Robert E. Hendricks, and Barbara R. Hendricks, Intervenors.
No. 91-945.
District Court of Appeal of Florida, First District.
January 2, 1992.
*1092 Mark D. Davis of Ramey & Davis, DeFuniak Springs, for appellants.
George Ralph Miller, DeFuniak Springs, for appellees.
Robert C. Apgar and Darren A. Schwartz, Haben, Culpepper, Dunbar & French, P.A., Tallahassee, for intervenors.
WEBSTER, Judge.
Appellants (plaintiffs below) seek review of decisions by the trial court (1) allowing a number of parties to intervene after defendants had failed timely to respond to the complaint, and a Clerk's Default had been entered as to a number of the defendants; (2) allowing the intervenors to file a motion to dismiss; and (3) granting the intervenors' motion to dismiss and dismissing the action with prejudice. Because we conclude that it was an abuse of discretion to allow intervention in this action, we reverse.
This action had its genesis in a zoning dispute. According to the complaint, appellants Jerry Grimes and his wife, Laura Grimes, are the owners of a parcel of real property situated in Walton County. The property was purchased with the intent to use it for "personal residential, commercial business office, and construction equipment storage" purposes; the last two uses to relate to appellant Destin Piling and Excavation, Inc., a corporation in which Jerry Grimes is the sole shareholder. At the time of the purchase, the property was zoned "residential development" which, "according to the Walton County Zoning Ordinance, allows light industrial uses."
The complaint further alleges that, in response to a written application by the Grimeses, the Walton County Building Department issued a "Certificate of Zoning Compliance," which certified that the uses proposed by the Grimeses for the property complied "with all Walton County Zoning regulations." However, shortly after the "Certificate of Zoning Compliance" had been issued, several owners of land in the vicinity of the Grimeses' parcel appealed the Building Department's action to the Walton County Board of Adjustment. After a public hearing, the Board of Adjustment "voted unanimously to deny the issuance of the Certificate of Zoning."
Appellants then filed an action in circuit court, seeking review of the Board of Adjustment's decision. For reasons that are not entirely clear from the record, the parties to the first action (appellants, Walton County, the Board of Adjustment and the Board's members), through their attorneys, entered into a stipulation, pursuant to which they agreed that that action would be dismissed without prejudice; that the *1093 Board of Adjustment would reconsider the matter at its next regular meeting; and that the stipulation was not intended to prejudice in any way "[appellants'] right to judicial relief of the Board's decision on reconsideration of the zoning certificate."
A transcript attached to, and made a part of, the complaint reflects that, in due course, the matter was placed once again on the Board of Adjustment's agenda. However, the Board, by a unanimous vote, refused to reconsider the matter, as the parties had stipulated in the first action. Accordingly, appellants filed the present action.
The complaint is in two counts. However, both counts seek the same narrow relief  to compel the Board of Adjustment to live up to the agreement reached in the first action, and to reconsider its previous decision regarding the correctness of the Building Department's conclusion. The first count sought to do this by requesting a writ of mandamus; and the second count sought to do it by an "action to enforce a stipulation."
Some two weeks after a Clerk's Default had been entered against the individual defendants, who composed the Board of Adjustment, a "Petition for Leave to Intervene" was filed by twelve individuals. (Although no default had been entered against the two remaining defendants  Walton County and the Walton County Board of Adjustment  there is nothing in the record to indicate that either had filed any response to the complaint.) The Petition alleged (1) that the petitioners were "all homeowners in the residential neighborhood in which the [appellants] propose to operate their excavation business"; (2) that "operation of the excavation business in the ... neighborhood ... would involve the use of heavy equipment such as dump trucks, frontend loaders, and incinerators, which would cause excessive air pollution and noise ..."; (3) that "operation of the excavation business and the high frequency of heavy truck use on the unpaved roads in the... neighborhood ... would cause travel ... to become even more dangerous ..., thereby increasing the risk of injury to children in the neighborhood"; and (4) that "operation of the excavation business in the neighborhood ... would cause a decline in property values, and economic injury, all to the detriment of [petitioners]." The Petition also contained the legal conclusion that "[a]s homeowners in the neighborhood in which [appellants] plan to operate their excavation business, [petitioners] will either gain or lose by the direct legal operation and effect of this court's judgment."
Over the objection of appellants, the trial court first granted the Petition for Leave to Intervene, and then allowed the intervenors to file a motion to dismiss the complaint, despite the fact that, apparently, at that point none of the defendants had filed any response to the complaint and, therefore, all were in default. The motion to dismiss argued principally "that the complaint fail[ed] to state a cause of action upon which relief may be granted" because "the Board of Adjustment lack[ed] jurisdiction to rehear the case." Eventually, the trial court dismissed both counts of the complaint with prejudice. The sole reason stated by the trial court for dismissal of the count seeking mandamus was that appellants were attempting "to coerce a discretionary action"; and the sole reason stated for dismissal of the count seeking to enforce the stipulation was that, "although titled differently, [it] would have the same force and effect as a Writ of Mandamus."
Rule 1.230, Florida Rules of Civil Procedure, reads as follows:
Anyone claiming an interest in pending litigation may at any time be permitted to assert his right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding, unless otherwise ordered by the court in its discretion.
As the language of the rule clearly indicates, whether or not to grant a request to intervene in a pending action is a decision which rests within the sound discretion of the trial court; and the trial court's decision will not be reversed unless shown to have been an abuse of discretion. Idacon, Inc. v. Hawes, 432 So.2d 759 (Fla. 1st DCA 1983). Consistent with the policies which *1094 the Rule is intended to advance, the Rule should, in general, be liberally construed. National Wildlife Federation, Inc. v. Glisson, 531 So.2d 996 (Fla. 1st DCA 1988). However, a trial court's discretion is not unbounded; rather, it is obliged, in reaching its decision, to follow established law. Coral Bay Property Owners Ass'n v. City of Coral Gables, 305 So.2d 853 (Fla. 3d DCA 1974).
Although substantially predating Rule 1.230, the test generally applied to determine whether a trial court has abused its discretion in ruling upon a request for leave to intervene is the following:
"... [T]he interest which will entitle a person to intervene ... must be in the matter in litigation, and of such a direct and immediate character that the intervener will either gain or lose by the direct legal operation and effect of the judgment. In other words, the interest must be that created by a claim to the demand in suit or some part thereof, or a claim to, or lien upon, the property or some part thereof, which is the subject of litigation."
Morgareidge v. Howey, 75 Fla. 234, 78 So. 14, 15 (1918). Plainly, under this test, "[a] showing of indirect, inconsequential or contingent interest is wholly inadequate...." Faircloth v. Mr. Boston Distiller Corp., 245 So.2d 240, 244 (Fla. 1970), receded from on other grounds in National Distributing Co. v. Office of Comptroller, 523 So.2d 156 (Fla. 1988).
We recognize the broad discretion which trial courts possess when deciding whether or not to permit intervention. However, having read with care the entire record in this case, we are constrained to conclude that the trial court abused its discretion when it granted the Petition for Leave to Intervene.
The issue framed by appellants' complaint was an extremely narrow one  whether the Board of Adjustment could be held to the agreement which it had made (through its attorney) in the first action, and required to reconsider its previous decision regarding the correctness of the Building Department's conclusion that the uses proposed by the Grimeses for the property complied with all applicable county zoning ordinances. Although, in their Petition, the intervenors asserted in conclusory terms that they would "either gain or lose by the direct legal operation and effect of [the trial] court's judgment," the "reasons" cited by the intervenors to support their contention fail to do so. This is because the "reasons" listed by the intervenors all deal with what the intervenors perceive would be the adverse impact on the neighborhood should the Board of Adjustment reverse its prior decision and allow the Grimeses to conduct an excavation business from their property. However, this action does not seek to require the Board of Adjustment to reverse its earlier decision; rather, it merely seeks to require the Board of Adjustment to live up to its agreement and to reconsider the matter.
We are unable to see any "direct and immediate" "interest" which the intervenors have in this action; nor would they stand to "gain or lose by the direct legal operation and effect of the judgment" in this action. On the contrary, the intervenors' "interest" in this action is, we believe, clearly "indirect [and] contingent." The only possible effect that a judgment by the trial court granting the relief requested by appellants could have on the intervenors would be to require them to present to the Board of Adjustment once again their arguments against the Grimeses' request. Only if the Board of Adjustment were to reverse itself and to determine that the Building Department's conclusion had been correct would the intervenors be directly affected. However, such a decision by the Board of Adjustment would certainly not be required by any judgment which the trial court might enter as to the issue presented in this action.
Because the "interest" of the intervenors in this action is "indirect [and] contingent" rather than "direct and immediate," the trial court abused its discretion when it granted the Petition for Leave to Intervene. Because it was error to allow intervention, it was also error to allow the intervenors to file their motion to dismiss, and *1095 then to grant the motion, dismissing the action with prejudice. Therefore, we reverse and remand for further proceedings consistent with this opinion.
REVERSED and REMANDED, with directions.
ALLEN and KAHN, JJ., concur.