806 So.2d 511 (2001)
Michelle HAUSMANN, as Intermediary on Behalf of John and Jane DOE, Petitioner,
v.
L.M. and J.M., Respondents.
No. 4D01-1811.
District Court of Appeal of Florida, Fourth District.
September 5, 2001.
Opinion on Rehearing November 7, 2001.
*512 Lynn G. Waxman of Lynn G. Waxman, P.A., West Palm Beach, and Amy Hickman of Hausmann & Hickman, Boynton Beach, for petitioner.
Jeanne C. Brady of Brady & Brady, P.A., and Steven M. Pesso of Steven M. Pesso, P.A., Boca Raton, for respondents.
WARNER, J.
Petitioner, an adoption intermediary, seeks to quash an order of the circuit court granting grandparents the right to intervene in the adoption proceedings of their daughter's infant. Because the grandparents had filed their own petition for adoption before that of the prospective adoptive parents, had custody of the child for a period of time, and challenged whether the consents given by the child's parents were invalid because of abandonment, we deny the petition.
J.T.M. was born October 1, 2000, to birth mother M.M. and father R.R., who were unmarried. He was hospitalized on January 1, 2001, for medical treatment resulting from the birth mother's neglect. On January 4, 2001, the Department of Children and Family Services ("DCFS") took J.T.M. from his birth mother and placed him with respondents, his maternal *513 grandparents. DCFS then initiated dependency proceedings.
Later in January, the birth mother consented to the adoption of the child through petitioner. The mother then asked the court to place J.T.M. with petitioner for placement with the prospective adoptive parents. On February 6, 2001, the trial court granted the motion and ordered DCFS to remove the child from respondents. The next day, respondents filed a petition to adopt the child, contending that the parents had abandoned him. This case was assigned to Judge Alvarez.
After obtaining the father's consent to the adoption, petitioner, on behalf of the prospective parents, filed a petition for adoption on February 16, 2001, and the dependency proceedings were dismissed. This petition was filed in Judge Carlisle's division. The grandparents moved to intervene in these proceedings based upon their rights as grandparents and their own adoption petition. Judge Carlisle held a hearing on the motion to intervene and granted the same. Petitioner, on behalf of the prospective parents, then filed for review of the order granting intervention in this court. We have certiorari jurisdiction to review this order. See J.L. v. G.M., 687 So.2d 977, 977 (Fla. 4th DCA 1997).
Florida Rule of Civil Procedure 1.230, which also applies in adoption proceedings, see Fla. Fam. L.R.P. 12.230, provides:
Anyone claiming an interest in pending litigation may at any time be permitted to assert a right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding, unless otherwise ordered by the court in its discretion.
The standard of review of an order granting intervention is abuse of discretion. State, Dep't of Legal Affairs v. Rains, 654 So.2d 1254, 1255 (Fla. 2d DCA 1995). In Union Central Life Insurance Co. v. Carlisle, 593 So.2d 505, 507 (Fla.1992), the court set forth the test for intervention:
The test to determine what interest entitles a party to intervene is set forth in Morgareidge v. Howey, 75 Fla. 234, 238-39, 78 So. 14, 15 (1918):
[T]he interest which will entitle a person to intervene ... must be in the matter in litigation, and of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment. In other words, the interest must be that created by a claim to the demand in suit or some part thereof, or a claim to, or lien upon, the property or some part thereof, which is the subject of litigation.
It then explained a two step analysis: "First, the trial court must determine that the interest asserted is appropriate to support intervention. See Morgareidge. Once the trial court determines that the requisite interest exists, it must exercise its sound discretion to determine whether to permit intervention." Id. at 507.
In this case, the grandparents had filed their own petition for adoption and alleged that the parents had abandoned the child so that their consents to the prospective parents' adoption were invalid. The trial court knew that the abandonment and validity of the consents would be an issue in the prospective parents' petition. Further, even without consolidation of the competing adoption petitions, any final resolution in favor of the prospective parents would directly affect the grandparents' ability to adopt the infant themselves. In its discretion, the trial court granted the intervention, and we find no abuse of discretion under the facts of this case.
*514 We distinguish Y.H. v. F.L.H., 784 So.2d 565 (Fla. 1st DCA 2001), in which the court affirmed the trial court's denial of a grandparent's request to intervene in a pending adoption proceeding. In that case, the grandmother premised her right to intervene solely on two grounds: (1) her daughter had lived with her during the pregnancy such that the yet unborn child had lived with the grandmother for over six months, giving her statutory priority under section 63.0425(1), Florida Statutes (1999); and (2) her substantive due process right to parent by virtue of her daughter's minority at the time she gave birth. The trial court determined these were insufficient interests on which to assert standing, and the first district affirmed. See Y.H., 784 So.2d at 571-72. In this case, apart from the grandparents' claim of priority, they allege that the child was neglected and abandoned by the parents so that their consents to the adoption were invalid, a claim not made in Y.H. and one which would eliminate any preferred position the prospective parents would have to adopt the child.
Based upon the foregoing, the petition is denied.
GROSS and TAYLOR, JJ., concur.

ON MOTION FOR REHEARING
WARNER, J.
Petitioner and amici move for rehearing, alleging that our opinion creates a new right for grandparents to intervene and adopt their minor grandchildren. They read section 63.0425(1), Florida Statutes (1999), as the exclusive circumstance under which grandparents may adopt. That section states,
When a child who has lived with a grandparent for at least 6 months is placed for adoption, the agency or intermediary handling the adoption shall notify that grandparent of the impending adoption before the petition for adoption is filed. If the grandparent petitions the court to adopt the child, the court shall give first priority for adoption to that grandparent.
§ 63.0425(1), Fla. Stat. (1999). They argue that because the infant in this case had not lived with the grandparents for six months, the grandparents were precluded from adopting the child under any circumstances.
We do not read the statutory provisions as being exclusive. Section 63.042, which covers who may adopt a child, provides that a husband and wife may jointly adopt. See § 63.042(2)(a), Fla. Stat. (1999). The statute disqualifies certain persons from adopting, but it does not disqualify relatives of the child, particularly grandparents. See § 63.042(3),(4), Fla. Stat. (1999). Section 63.112 sets forth the allegations a petition for adoption must contain, but nothing in that section precludes adoption by a grandparent.
In this case, the prospective parents filed a petition for adoption based upon the consents filed by the mother and father. The grandparents' petition for adoption alleged that the court could waive the parents' consents because of abandonment of the child. See § 63.072(1), Fla. Stat. (1999). Thus, both petitions for adoption conform to all of the statutory requirements, one alleging consent and one alleging facts to waive consent. See § 63.112, Fla. Stat. (1999). It does not appear that the legislature contemplated the scenario which has evolved in this case, but nothing in the statute indicates that two competing petitions cannot be filed. Each petitioning party then has an interest in the outcome of the other proceedings, and clearly, the court can approve only one petition.
Petitioner and amici also raise the parents' fundamental right to make *515 decisions in the best interest of their child as preventing the grandparents' involvement where the parents have consented to the adoption by the prospective parents. Indeed, in Troxel v. Granville, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), a case involving grandparent visitation, the Supreme Court recently reaffirmed that "the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of the children." Nevertheless, the majority placed a significant caveat on that broad statement.
First, the Troxels did not allege, and no court has found, that Granville was an unfit parent. That aspect of the case is important, for there is a presumption that fit parents act in the best interests of their children. As this Court explained in Parham v. [J.R., 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979)],
"[O]ur constitutional system long ago rejected any notion that a child is the mere creature of the State and, on the contrary, asserted that parents generally have the right, coupled with the high duty, to recognize and prepare [their children] for additional obligations.... The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions. More important, historically it has recognized that natural bonds of affection lead parents to act in the best interests of their children." 442 U.S., at 602, 99 S.Ct. 2493, 61 L.Ed.2d 101 (alteration in original)(internal quotation marks and citations omitted).
Accordingly, so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children. (Citations omitted).
Id. at 68, 120 S.Ct. 2054 (emphasis added). From this, we glean, and certainly the dependency and termination laws of this state also presume, that where a parent has been found to be unfit, that parent abdicates his or her sole right to determine the best interests of a child. In this case, that is the exact situation. The grandparents allege the mother and father abandoned their child before consenting to his adoption, and this is not simply a cavalier statement. The Department of Children and Family Services removed the child from the mother and placed him with the grandparents because of the mother's failure to adequately care for the child. Whether the mother sufficiently abandoned the child to excuse her required consent, and thus, any right the mother may have to make a decision as to who may adopt her child, is a question of fact for the judge.
We recognize that our construction opens the door for grandparents to challenge an adoption in the type of circumstances as set forth in this case. If, however, grandparents have no right to adopt under any circumstance unless they have lived with the child for six months, then clearly not only can they not intervene, but their petition for adoption must also be dismissed. Thus, they could not adopt even if their daughter were found to be unfit or incompetent to make a decision regarding her child. Because of the implications of our decision and the chilling effect it may have on private adoptions, we certify the following question to the supreme court:

*516 MAY A GRANDPARENT INTERVENE IN AN INTERMEDIARY ADOPTION PROCEEDING WHERE THE GRANDPARENTS HAD CUSTODY OF THE CHILD FOR LESS THAN SIX MONTHS, HAVE FILED THEIR OWN PETITION FOR ADOPTION, AND ALLEGE IN THEIR OWN PETITION FOR ADOPTION THAT THE PARENTS' CONSENT CAN BE WAIVED BY ABANDONMENT?
GROSS and TAYLOR, JJ., concur.