849 So.2d 426 (2003)
Niranjan KISSOON, M.D., Appellant,
v.
Patricia C. ARAUJO, as Personal Representative of the Estate of Kelly Michele Campbell, Deceased, Bruce R. Maddern, M.D., Cheryl S. Cotter, M.D., and Joseph F. Cassady, M.D., Appellees.
No. 1D02-4524.
District Court of Appeal of Florida, First District.
July 14, 2003.
*427 C. Rufus Pennington, of Margol & Pennington, P.A., Jacksonville, for appellant.
Corinne C. Hodak, of Corinne C. Hodak, P.A., Jacksonville, for appellee Araujo; Robert E. Mansbach, Jr., Orlando; Francis E. Pierce, III, of Gurney & Handley, P.A., Orlando; and Bruce Bullock and W. Douglas Childs, Jacksonville, for appellees Maddern, Cotter, and Cassady.
WOLF, C.J.
Dr. Niranjan Kissoon appeals the trial court's protective order which barred him from attending a deposition and sealed a previously taken deposition transcript and the trial court's denial of his motion to intervene in a medical malpractice suit. We do not address the order denying Dr. Kissoon's request to be present at the *428 deposition because the deposition at issue has taken place rendering that issue moot. We decline to address the issue concerning the sealing of the prior deposition because Dr. Kissoon failed to ask the trial court to unseal the transcript. We affirm the trial court's denial of the motion to intervene for the reasons expressed herein.
The plaintiff in the trial court, Patricia C. Araujo, is the personal representative of the estate of Kelly Michelle Campbell ("Campbell") who received treatment and care from defendants below, Drs. Bruce R. Maddern, Cheryl S. Cotter, and Joseph F. Cassady. On July 31, 2002, approximately three weeks before the trial was scheduled to begin, the parties held a hearing as to whether Dr. Cassady's expert witness, Dr. Kettrick, could testify on a previously undisclosed and unasserted defense that Dr. Kissoon was liable for Campbell's death. Defendants' counsel repeated certain alleged comments made by Dr. Kettrick at an earlier deposition.[1] Originally, Dr. Kettrick was listed as an expert witness on the standard of care for respondents, but prior to his deposition, plaintiff's attorney was informed by Dr. Cassady's attorney that Dr. Kettrick would also be testifying with regard to causation.
On August 27, 2002, Dr. Kissoon filed a motion to intervene pursuant to rule 1.230, Florida Rules of Civil Procedure. Dr. Kissoon alleged that the reckless and untrue allegations by the defendants had the potential to harm his reputation and career as a physician and impair his protected rights to practice medicine. He argued that he should be granted leave to intervene in the action so that he could have an opportunity to examine and cross-examine witnesses and to be heard on arguments of law and fact to defend his rights and reputation. In support of his motion to intervene, Dr. Kissoon filed his own affidavit and affidavits from two other doctors. These affidavits all noted that the alleged accusations by Dr. Kettrick had the potential to disrupt the care given at the hospitals with whom Dr. Kissoon was affiliated. Finally, Dr. Kissoon stated that if not allowed to respond to the accusations made by Dr. Kettrick, "it could potentially hinder my ability to continue participating in various programs at [the hospital] that benefit many children in our community."
Noting that the case was one of first impression in Florida, the trial court denied the motion for intervention noting that any potential effect on Dr. Kissoon would not be a direct result of the judgment entered in the case. Under the facts of this case, we agree.[2]
Dr. Kissoon filed a motion to intervene pursuant to rule 1.230, Florida Rules of Civil Procedure, which states in its entirety as follows:
Rule 1.230. Interventions
Anyone claiming an interest in pending litigation may at any time be permitted to assert a right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding, unless otherwise ordered by the court in its discretion. *429 Whether or not to grant a motion for intervention is within the court's discretion, and will not be reversed unless it is shown to have been an abuse of this discretion. See Union Cent. Life Ins. Co. v. Carlisle, 593 So.2d 505 (Fla.1992); Grimes v. Walton County, 591 So.2d 1091 (Fla. 1st DCA 1992); see also Park A Partners, Ltd., East Brickell Assoc. v. City of Miami, 844 So.2d 782 (Fla. 3d DCA 2003).
The key issue in determining if intervention should be granted is whether Dr. Kissoon has an interest in the outcome of the underlying medical malpractice suit. As reiterated in numerous cases, the test to determine what interest entitles a party to intervene was set forth in Morgareidge v. Howey, 75 Fla. 234, 238-39, 78 So. 14, 15 (1918):
[T]he interest which will entitle a person to intervene ... must be in the matter in litigation, and of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment. In other words, the interest must be that created by a claim to the demand in suit or some part thereof, or a claim to, or lien upon, the property or some part thereof, which is the subject of litigation.
(Emphasis added.)
While Dr. Kissoon asserts that if there is a verdict in favor of the defendants the alleged comments by defendants' expert witness could potentially have a devastating effect on his reputation, subject him to professional investigation by the Florida Board of Medicine, and hinder the practice of medicine at the children's hospitals where he provides treatment, none of these alleged consequences are a direct legal effect of a judgment in this case. Such a judgment cannot have a direct effect on Dr. Kissoon's practice. A judgment in favor of defendants will not automatically trigger an investigation, nor can it impose liability on Dr. Kissoon. If the defendants are found to be not liable it could be for a reason other than the jury believed that Dr. Kissoon's actions contributed to or caused Campbell's death (e.g., because they found the respondents not negligent or found that Campbell would have died regardless of the surgery). Such a showing of indirect, inconsequential, or contingent interest is inadequate to meet the test set forth in Morgareidge v. Howey. See Grimes v. Walton County, 591 So.2d 1091 (Fla. 1st DCA 1992).
In Grimes, the plaintiffs sought review of a local adjustment board's decision in a zoning case and adjacent homeowners moved to intervene. This court reversed the trial court's granting of the motion to intervene, holding that the homeowners should not have been allowed to intervene because their interest in the action was indirect and contingent rather than direct and immediate:
Although, in their Petition, the intervenors asserted in conclusory terms that they would "either gain or lose by the direct legal operation and effect of [the trial] court's judgment," the "reasons" cited by the intervenors to support their contention fail to do so. This is because the "reasons" listed by the intervenors all deal with what the intervenors perceive would be the adverse impact on the neighborhood should the Board of Adjustment reverse its prior decision and allow the Grimeses to conduct an excavation business from their property....
We are unable to see any "direct and immediate" "interest" which the intervenors have in this action; nor would they stand to "gain or lose by the direct legal operation and effect of the judgment" in this action. On the contrary, the intervenors' "interest" in this action is, we *430 believe, clearly "indirect [and] contingent." The only possible effect that a judgment by the trial court granting the relief requested by appellants could have on the intervenors would be to require them to present to the Board of Adjustment once again their arguments against the Grimeses' request. Only if the Board of Adjustment were to reverse itself and to determine that the Building Department's conclusion had been correct would the intervenors be directly affected. However, such a decision by the Board of Adjustment would certainly not be required by any judgment which the trial court might enter as to the issue presented in this action. Because the "interest" of the intervenors in this action is "indirect [and] contingent" rather than "direct and immediate," the trial court abused its discretion when it granted the Petition for Leave to Intervene....
Id. at 1094 (emphasis in original).
Here, Dr. Kissoon's interests, although not inconsequential, are indirect and contingent. The perceived impact on his reputation is not a result of the legal operation of the judgment.[3] Although the alleged accusations are disturbing, Dr. Kissoon is no more directly affected by the litigation proceedings below than the homeowners in Grimes.
Appellant relies primarily on National Wildlife Fed'n, Inc. v. Glisson, 531 So.2d 996 (Fla. 1st DCA 1988). There, two wildlife groups sought to intervene in a suit filed against Alachua County regarding the amendment of its land use plan. The amendment had the effect of regulating development and the natural habitat of the area's wildlife. There, this court held that intervention was proper based on the evidence of direct impact of the trial court's decision (judgment) on the land which they were using:
In support of their motion to intervene appellants submitted affidavits of six Florida Wildlife Federation members who are residents and real property owners and/or business owners and operators in the Cross Creek area. The affiants testified as to their use of the area in question as well as the potential impact on their lives and businesses should plaintiffs prevail in their suit against Alachua County.
....
Appellants clearly demonstrated an interest of such a direct and immediate character that they would either gain or lose by the direct legal operation of the judgment in the plaintiffs' suit against Alachua County. The fact that the proposed intervenors acknowledged that they were not interested in litigating every issue raised by the plaintiffs is immaterial. A proposed intervenor's interest may be in the entire suit, or some part thereof. Accordingly, intervention should have been allowed. The denial of appellants' motion to intervene constitutes an abuse of discretion on the part of the trial court....
Id. at 998.
In Glisson, there was evidence that the intervenors would gain or lose the quality of use of the land at issue as a result of the zoning judgment rendered by the court. No judgment in the malpractice action in the instant case will directly affect Dr. Kissoon. Dr. Kissoon cannot be held liable, cannot be investigated, and cannot be prevented from practicing medicine as a direct result of any judgment.
*431 In conclusion, we find that appellant has failed to show that his interests would be directly affected by the outcome of the litigation. Thus, the trial court did not abuse its discretion in denying the motion to intervene.
AFFIRM.
ERVIN and BENTON, JJ., CONCUR.
NOTES
[1] We note that this court was never privy to the exact comments made by Dr. Kettrick. The transcript containing the comments was sealed by the trial court and not part of the record on appeal. Furthermore, the parties are barred from disclosing the contents of the transcript to non-parties. At oral argument it was revealed that at a subsequent deposition Dr. Kettrick denied making the alleged comments about Dr. Kissoon.
[2] We note that neither party has asserted in their pleadings that Dr. Kissoon should be included on the verdict form as a "Fabre" defendant.
[3] For example, even if administrative proceedings are brought based on the alleged comments, Dr. Kissoon could address the allegations made against him directly in that forum and the judgment will have no direct impact on the proceeding.