932 So.2d 383 (2006)
HARBOR SPECIALTY INSURANCE COMPANY, Appellant,
v.
Sally SCHWARTZ and Steven English, Appellee.
No. 2D05-2248.
District Court of Appeal of Florida, Second District.
March 31, 2006.
*384 Jeffrey D. Kottkamp and Robert C. Shearman of Henderson, Franklin, Starnes & Hold, P.A., Fort Myers, for Appellant.
Mark C. Menser of Viles & Beckman, LLC, Fort Myers, for Appellee Sally Schwartz.
Mark A. Boyle of Fink & Boyle, P.A., Fort Myers, for Appellee Steven English.
STRINGER, Judge.
Harbor Specialty Insurance Company ("Harbor Specialty") seeks review of the trial court's order denying its postjudgment motion for leave to intervene in this automobile negligence action. We conclude that the trial court did not abuse its discretion in denying the motion because Harbor Specialty does not have a *385 direct and immediate interest in the cause of action that would justify intervention. Accordingly, we are compelled to affirm.
In 1998, Sally Schwartz was rendered a quadriplegic when her vehicle was involved in a collision with a vehicle driven by Steven English and insured by Harbor Specialty. English was eventually convicted of DUI, leaving the scene of an accident with injuries, and violation of license restrictions stemming from this accident. In the meantime, Schwartz accepted Harbor Specialty's policy limits of $10,000 in full settlement of any and all claims against English or Harbor Specialty. Schwartz signed a "Release of All Claims," which specifically released English and Harbor Specialty "from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever" resulting from the accident. All three parties were represented by counsel at the time of settlement.
Notwithstanding the settlement and release, Schwartz subsequently filed a lawsuit against English arising out of the accident. English, who was serving his prison sentence for the convictions stemming from the accident, filed a pro se motion to dismiss the complaint in which he argued that the settlement and release barred the cause of action. The court denied the motion to dismiss, and thereafter English filed a pro se answer in which he asserted the affirmative defense of settlement and release. In the course of pretrial discovery, Schwartz served English with a request for admissions which asserted that (1) the defense of settlement and/or release was waived; (2) there was a lack of consideration when the release was signed; (3) there was never a meeting of the minds between the parties; (4) any agreement entered into by Schwartz and English and/or Harbor Specialty was the result of mistake or inadvertence; (5) English was under the influence of alcohol and legally drunk at the time of the accident; (6) English acted with wanton and reckless disregard and caused Schwartz to be permanently paralyzed; and (7) Schwartz was entitled to punitive damages. English did not respond to the request for admissions, and his failure to respond resulted in a summary judgment on liability based on the technical admissions.
At least a month before trial on damages, English left a phone message with Harbor Specialty in which he gave his name and a phone number and stated that he was going to "court" later in the month. English did not leave a claim number, the court location, the date and time of "court" appearance, the name of the policy holder,[1] or an address where he resided. Harbor Specialty asserted that it attempted to call the number left by English and received a "fast busy." Eight days before trial, Attorney Mark Boyle sent a letter to Harbor Specialty advising that he had been "asked to represent the interests of English." Attorney Boyle requested that Harbor Specialty enter a defense on behalf of English and agree to indemnify him from any results of the upcoming trial. Harbor Specialty responded to Attorney Boyle's correspondence by a letter asserting that it did not have a duty to defend based on the settlement and release. Harbor Specialty enclosed a copy of the release and the settlement check and requested that Attorney Boyle provide these documents to the court and opposing counsel.
Harbor Specialty took no further action until Attorney Boyle called Harbor Specialty while the jury was deliberating to inform Harbor Specialty that he did not present the evidence of the settlement as *386 requested and that English was representing himself in trial. Harbor Specialty then sent an attorney to court to present a copy of the release and the settlement check but did not formally seek to defend English or intervene. The court declined to entertain any defenses based upon the release and settlement and indicated that the issue could be raised with posttrial motions. After the jury returned a verdict in favor of Schwartz and the trial court entered final judgment for $35 million against English, Harbor Specialty filed its motion to intervene. At the time, a motion for relief from judgment filed on behalf of English by other counsel was pending.
At the hearing on the motion, Harbor Specialty revealed that its purpose in seeking intervention was to re-argue the affirmative defense of release and settlement. Counsel for Harbor Specialty conceded that Harbor Specialty's alleged "interest" in the judgment was actually a concern over a possible "bad faith" lawsuit, and he acknowledged that any issues pertaining to the release and settlement or Harbor Specialty's potential exposure could be fully litigated in the bad faith action. English informed the court that he had negotiated a postjudgment agreement in which Schwartz would not execute on the punitive damages claim in exchange for English's assignment of his bad faith claim against Harbor Specialty. He also withdrew his motion for relief from judgment.
The court denied Harbor Specialty's motion to intervene based on its determination that Harbor Specialty had failed to demonstrate or show a sufficient interest in the judgment. The court stated that "[a]t most Harbor has alleged only a contingent interest that could have an effect on the Company's future obligations to pay monies to Ms. Schwartz, pending the outcome of other litigation." Harbor Specialty subsequently filed a declaratory action against English, denying any responsibility for his defense and denying any obligation to participate in the tort case on behalf of English. That action remains pending.
Florida Rule of Civil Procedure 1.230 provides that "[a]nyone claiming an interest in pending litigation may at any time be permitted to assert a right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding, unless otherwise ordered by the court in its discretion." Intervention is proper when the intervenor's interest is in the litigation and is "`of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment. In other words, the interest must be that created by a claim to the demand in suit or some part thereof, or a claim to, or lien upon, the property or some part thereof, which is the subject of litigation.'" Union Cent. Life Ins. Co. v. Carlisle, 593 So.2d 505, 507 (Fla.1992) (quoting Morgareidge v. Howey, 75 Fla. 234, 78 So. 14, 15 (1918)).
Once the trial court determines that the intervenor's interest is sufficient, it exercises its discretion to determine whether to permit intervention. Carlisle, 593 So.2d at 507. "In deciding this question the court should consider a number of factors, including the derivation of the interest, any pertinent contractual language, the size of the interest, the potential for conflicts or new issues, and any other relevant circumstance." Id. at 507-08. This court reviews an order denying a motion to intervene for an abuse of discretion. Barnhill v. Fla. Microsoft Anti-Trust Litigation, 905 So.2d 195, 199 (Fla. 3d DCA 2005); Hausmann ex rel. Doe v. L.M., 806 So.2d 511, 513 (Fla. 4th DCA 2001).
It is well settled that an insurance company's interest in protecting its *387 subrogation rights is sufficient to justify intervention in its insured's tort litigation. Carlisle, 593 So.2d 505; Provident Life & Accident Ins. Co. v. Prichard, 636 So.2d 731 (Fla. 4th DCA 1993); Southland Life Ins. Co. v. Abelove, 556 So.2d 805, 806 (Fla. 5th DCA 1990). In this case, however, Harbor Specialty has no subrogation right to any amount of the $35 million jury verdict. Nor does Harbor Specialty have any liability for the $35 million award because it has already paid out its policy limits on behalf of English. Instead, Harbor Specialty is worried that it will have to pay Schwartz the $35 million if it loses a bad faith lawsuit initiated on behalf of English by Schwartz based on its failure to defend. Because Harbor Specialty does not have a subrogation interest in this case, its reliance on the above three cases is not persuasive.
Harbor Specialty's interest in this case is analogous to the interest of the appellant in Kissoon v. Araujo, 849 So.2d 426 (Fla. 1st DCA 2003), which the First District found insufficient to support intervention. In the underlying tort action in that case, the plaintiff sued the defendant doctors for wrongful death. Id. at 428. In one of the defendants' expert's depositions, the expert alleged that Dr. Kissoon was actually the legal cause of the decedent's death. Id. Dr. Kissoon sought to intervene, alleging that the comments "could potentially have a devastating effect on his reputation, subject him to professional investigation by the Florida Board of Medicine, and hinder the practice of medicine at the children's hospitals where he provides treatment."[2]Id. at 429. The trial court denied the motion based on its conclusion that any effect on Dr. Kissoon would not be a direct result of the judgment. Id. at 428.
The First District agreed, noting that any judgment in favor of the defendants would not automatically result in an investigation by the board or impose any liability on Dr. Kissoon. Id. at 429. The court explained that it was possible that a verdict for the plaintiff could be supported by a reason other than Dr. Kissoon's alleged negligence. The court also stated that, even if administrative proceedings were initiated against Dr. Kissoon, he would have a forum in which to address the allegations made against him and the judgment in the wrongful death action would have no impact on that proceeding. Id. at 430 n. 3.
In this case, the trial court determined that intervention was not permissible because Harbor Specialty's interest was nothing more than a "contingent interest that could have an effect on the Company's future obligations to pay monies to Ms. Schwartz pending the outcome of other litigation." As in Kissoon, the judgment against English will not have any direct effect on Harbor Specialty. Harbor Specialty sought to intervene to argue that a release Schwartz executed in favor of Harbor Specialty and English precluded recovery in tort against English. Harbor Specialty claims that, if it was permitted to raise this argument, the court would have had to vacate the judgment against English. In turn, English would not have a potential bad faith cause of action against Harbor Specialty based on its failure to defend.
Although a bad faith action could be initiated by Schwartz on behalf of English as a result of the final judgment, the final judgment will not automatically result in *388 such an action being filed. Furthermore, like Dr. Kissoon, Harbor Specialty will have a forum in which it can raise its objections if it is in fact sued for bad faith. In fact, counsel for Harbor Specialty conceded this point at the hearing on its motion to intervene. Harbor Specialty's argument that it would be precluded from relying on the release by the doctrines of res judicata or collateral estoppel is without merit because Harbor Specialty was not a party to the tort action. Both doctrines require the identity of persons and parties to the actions. See Campbell v. State, 906 So.2d 293, 294 (Fla. 2d DCA 2004).
For these reasons, the trial court properly determined that Harbor Specialty does not have a direct and immediate interest in the cause of action that would justify intervention. We are not unsympathetic to Harbor Specialty's argument that "something smells rotten in Denmark." Schwartz was able to invalidate a release and obtain a $35 million verdict against a pro se defendant based solely on his failure to respond to requests for admissions. On the other hand, Harbor Specialty had the opportunity to defend the action and declined to do so. More importantly, the only issue pertinent to whether intervention was permissible is the extent of the intervenor's interest. Because the trial court found that Harbor Specialty's interest was not sufficient in this case, it did not reach the question of whether the particular circumstances of the case support intervention.
Affirmed.
CASANUEVA and SILBERMAN, JJ., Concur.
NOTES
[1] English was not the named insured on the policy.
[2] Dr. Kissoon was not named as a Fabre defendant on the verdict form. See Fabre v. Marin, 623 So.2d 1182 (Fla.1993).