NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

BONAFIDE PROPERTIES, AS            )
TRUSTEE ONLY UNDER 14329           )
VILLAGE VIEW DR LAND TRUST,        )
                                   )
        Appellant,                 )
                                   )
v.                                 )   Case No.  2D14-5720
                                   )
WELLS FARGO BANK, N.A., AS          )
TRUSTEE FOR THE CERTIFICATE-        )
HOLDERS OF BANC OF AMERICA          )
ALTERNATIVE LOAN TRUST 2006-5,      )
MORTGAGE PASS-THROUGH               )
CERTICIFICATES, SERIES 2006-5,      )
                                   )
        Appellee.                  )
_____)

Opinion filed January 13, 2016.

Appeal from the Circuit Court for
Hillsborough County; Sandra Taylor,
Senior Judge.

Jeffrey A. Froeschle and Uta S. Grove of
Grove & Cintron, P.A., Largo, for Appellant.

Nancy M. Wallace and Ryan D. O'Connor
of Akerman LLP, Tallahassee, and William
P. Heller of Akerman LLP, Fort Lauderdale,
for Appellee.


PER CURIAM.

Bonafide Properties challenges the trial court's order denying its Motion to Join or Substitute as Real Party in Interest in Wells Fargo Bank's foreclosure action against Xavier LaTorre and Rebecca J. LaTorre. Bonafide purchased the property at a homeowners' association lien sale four years after the inception of Wells Fargo's foreclosure action against the LaTorres. Because Wells Fargo's action was pending and it had filed its notice of lis pendens before Bonafide purchased an interest in the property, we affirm.

On March 31, 2006, Mr. LaTorre executed a promissory note in the amount of $111,920 in favor of Bank of America. On the same day, both Mr. and Mrs. LaTorre signed a mortgage on the note in favor of Bank of America.[1] The LaTorres defaulted on the debt by failing to make the March 2010 payment and all subsequent payments. Additionally, they failed to pay their homeowners' association fees. On August 3, 2010, after taking possession of the note via special endorsement, Wells Fargo filed a foreclosure complaint against the LaTorres. The complaint also named the Carrollwood Village Phase III Homeowners' Association as a defendant. Wells Fargo then recorded a notice of lis pendens on August 12, 2010. Both the LaTorres and the Association filed answers and affirmative defenses.

Subsequently, the Association brought a lien foreclosure action against the LaTorres that resulted in the property being sold to Bonafide at a lien foreclosure sale on July 11, 2014. On September 9, 2014, Bonafide filed its Motion to Join or Substitute as Real Party in Interest in Wells Fargo's foreclosure action against the

---

[1]The note does not specify who the borrowers are, but it is signed only by Mr. LaTorre. The mortgage designates the borrowers to be both Xavier and Rebecca LaTorre, and both of the LaTorres signed the mortgage.

LaTorres. Following a hearing, the trial court denied the motion and barred Bonafide from filing any pleading, paper, or discovery or from participating in the trial on the matter. The court did, however, find that Bonafide had a right of redemption which was to be determined upon the judicial sale of the property. It is this order that Bonafide now appeals.

"[W]hen property is purchased during a pending foreclosure action in which a lis pendens has been filed, the purchaser generally is not entitled to intervene in the pending foreclosure action." Market Tampa Invs., LLC v. Stobaugh, 177 So. 3d 31, 32 n.1 (Fla. 2d DCA 2015) (alteration in original) (quoting Bymel v. Bank of Am., N.A., 159 So. 3d 345, 347 (Fla. 3d DCA 2015)); see also Whitburn, LLC, v. Wells Fargo Bank, N.A., No. 2D14-5563 (Fla. 2d DCA Dec. 18, 2015) ("Because Whitburn purchased the property in June 2013 *after* Wells Fargo filed its notice of lis pendens in December 2012, Whitburn took the property subject to the outcome of the litigation in Wells Fargo's case, including the foreclosure sale to which Wells Fargo was entitled as a result of the judgment entered in its favor."); Timucuan Props. v. Bank of N.Y. Mellon, 135 So. 3d 524, 524 (Fla. 5th DCA 2014) ("This court is committed to the doctrine that a purchaser pendente lite is not entitled to intervene." (quoting Intermediary Fin. Corp. v. McKay, 11 So. 531, 531 (Fla. 1927))); SADCO, Inc. v. Countrywide Funding, Inc., 680 So. 2d 1072, 1072 (Fla. 3d DCA 1996) ("[A] purchaser of property that was [the] subject of [a] lis pendens arising from [a] bank's pending foreclosure action [is] not entitled to intervene in that action."); Andresix Corp. v. Peoples Downtown Nat'l Bank, 419 So. 2d 1107, 1107 (Fla. 3d DCA 1982) ("We affirm the trial court's order denying the motion to intervene filed by Andresix Corporation upon a holding that Andresix, as a purchaser of property which was then the subject of a mortgage foreclosure action and

- 3 -

accompanying lis pendens by Peoples Downtown National Bank, was not entitled to intervene in such action.").

Here, it is undisputed that Bonafide acquired its rights to the property four years after Wells Fargo initiated the foreclosure action and filed its notice of lis pendens. As such, the trial court did not abuse its discretion in determining that Bonafide is not entitled to intervene in Wells Fargo's foreclosure action.[2]

Affirmed.


SLEET and LUCAS, JJ., Concur.
ALTENBERND, J., Concurs with opinion.

---

[2]This court reviews orders denying intervention for an abuse of discretion. See Harbor Specialty Ins. Co. v. Schwartz, 932 So. 2d 383, 386 (Fla. 2d DCA 2006); see also Fla. R. Civ. P. 1.230.

ALTENBERND, Judge, Concurring.

I fully concur in this opinion. I write to more fully explain the innovative procedure involved in this case. Although the procedure does not justify intervention, occasionally it may require the trial court to take extra care in determining the amount required to redeem property in a foreclosure proceeding. I encourage others to study the innovative procedure exemplified by this case.

## I.  A BASIC DESCRIPTION OF THE PROCEDURE

In the last few years, the courts have been flooded with foreclosure proceedings filed by banks or their assignees against homeowners who borrowed purchase money secured by a first mortgage on the purchased property, often a homestead. Due to the economic downturn, many of these properties no longer have a market value in excess of the amount owed on the note and mortgage. For various reasons, many of these foreclosure proceedings have been pending for years without reaching the stage of a foreclosure sale.

Many of these properties are in neighborhoods with homeowners' associations. The owners of these properties tend to stop paying fees to the homeowners' association about the same time they stop paying the bank. They often either abandon the property or fail to maintain it. Homeowners' associations have been legitimately concerned that, if a significant number of neighborhood properties go into foreclosure, the entire neighborhood may spiral into failure. This same scenario occurs when the homes are condominium units in buildings with condominium associations. The associations are typically joined as parties in the bank's foreclosure action, but they have little or no control over those actions.

Since 1990, county courts have had jurisdiction to "hear all matters in equity," and they may handle foreclosure proceedings involving amounts within their jurisdiction. § 34.01(4), Fla. Stat. (2015); ch. 90-269, § 1, at 1972-73, Laws of Fla.; see also Alexdex Corp. v. Nachon Enters., 641 So. 2d 858, 862 (Fla. 1994). Because the amount in controversy in a case involving an association's lien is almost always within the county court's jurisdiction, the association can file a second foreclosure proceeding in county court. The bank is not a party to the second proceeding. The homeowner often defaults in this proceeding or the case is quickly set for trial. The homeowners' association thus obtains a judgment of foreclosure long before the bank's case is resolved.

At the foreclosure sale in the county court proceeding, the bidding is suppressed because the property is being sold subject to the bank's mortgage. Many of these properties have little or no market value in excess of the amount owed to the bank. They are often purchased by limited liability companies that specialize in such purchases. Our court records never reflect the purchase price at these sales, but basic economics dictates that the price must be nominal.

Once a limited liability company buys one of these properties at the county court foreclosure sale, it seems that they pay the homeowners' association dues, the property taxes, and the property insurance. They apparently rent the property to a new tenant. Thus, the homeowners' association benefits, the tax collector benefits, and the neighborhood as a whole may be stabilized by this practice. It may be that the bank benefits as well because the house does not go into disrepair during its foreclosure proceeding and the bank can afford to delay its foreclosure waiting for the housing market to rebound.

Unless the house requires extensive repair when purchased, the limited liability company, it would seem, can make a huge return on its investment by renting the house at fair market value after purchasing it for a nominal bid. That is capitalism. There is nothing inherently wrong with large profits in a market economy.

But there are two significant concerns with this innovative procedure. First, the limited liability company, having an incentive to maximize profits, has a great interest in delaying the bank's foreclosure proceeding. Its income depends on owning the house as long as possible before the bank's foreclosure sale. When the property goes to sale on the bank's judgment, the limited liability company must either pay fair market value for the property, resulting in its investment returning ordinary profits at best, or lose the property altogether. Thus, the longer a limited liability company can engage in delaying tactics in the bank's foreclosure proceedings, the more money it typically can make. Unlike the original property owner, the limited liability company is not in privity with the bank. It will never be liable on the note and mortgage, and it has little risk of incurring liability for prevailing party attorneys' fees. This innovative procedure pressures lawyers to "delay anyone's cause for lucre or malice." See In re Oath of Admission to the Fla. Bar, 73 So. 3d 149, 150 (Fla. 2011).

Second, I assume these homes are often rented to families. If a proper lis pendens has been filed by the bank, it is possible that such a lease may not be binding on or have any priority against the rights of the purchaser at the bank's foreclosure sale. See, e.g., § 83.561, Fla. Stat. (2015); ch. 2015-96, § 1, at 620-22, Laws of Fla. The family that has rented the home runs the risk of being out on the street in a very short amount of time. See id. It is possible that the family can be evicted in the middle of a school year. Our records in these appeals never tell us the rest of the story.

## II.  SPECIAL PRECAUTIONS TO PROTECT THE RIGHT OF REDEMPTION

The majority's opinion omits one fact that is relevant only to this concurrence.  The record in this case reflects that the original owners of the house, who had been liable on the note and mortgage, obtained a discharge in bankruptcy in July 2013.  Thus, the original owners have no interest in assuring that the dollar amounts contained in the final judgment will be correct when a final hearing is eventually held in this case.  They will have no exposure on a deficiency judgment.  It does not appear likely that any active party has an interest in assuring correct dollar amounts in this judgment.  But it is undisputed that Bonafide has a legal right of redemption.  As a practical matter, as discussed in section I, it seems unlikely that any house involved in this type of innovative procedure will have a value in excess of the amount stated in the bank's judgment of foreclosure.  Our record, however, provides no information about these factors because the final hearing has not yet occurred.  Nevertheless, it may be prudent for the trial court in this case to take special precautions to ensure that the evidence fully supports the monetary amounts entered in the ultimate judgment of foreclosure.

## III.  THE NEED FOR STUDY

This case, and perhaps another sixty appeals that have been filed in this court, all appear to involve some version of the innovative procedure described in section I of this concurrence.  The records in these appeals are always very limited because the issue involves the right of intervention.  I have been required to place many qualifiers in the description contained in section I because this court cannot know with any degree of certainty exactly what is transpiring with these properties.  Even attempting to determine when a potential intervenor like Bonafide should be allowed to

intervene and what limited role it should be permitted to play will be very hard, if not impossible, for this court to sort out.

It seems likely that there is a measure of good within this innovative procedure that should be preserved. It also seems likely that there is a measure of bad that ought to be regulated or prohibited by substantive law or rules of procedure. This court is not a proper forum to make these determinations or to establish any needed rule of law. Thus, I encourage The Florida Bar, the Supreme Court of Florida, and the Florida Legislature to use their respective powers to study this procedure and consider rules to maximize its benefit.