# Third District Court of Appeal

## State of Florida

Opinion filed September 10, 2014.
Not final until disposition of timely filed motion for rehearing.

————————————

Nos. 3D11-2905 & 3D12-506
Lower Tribunal No. 06-4689

————————————

## Geico General Insurance Company,
Appellant,

vs.

## Edelmida and Paulino Rodriguez, et al.,
Appellees.

Appeals from the Circuit Court for Miami-Dade County, Lester Langer, Judge.

Shutts & Bowen, LLP, and Frank A. Zacherl and Stephen T. Maher, for appellant.

Deutsch & Blumberg, P.A., and James C. Blecke, for appellees Edelmida and Paulino Rodriguez; Kuvin & Stettin, LLC, and Eric Stettin (Weston); Joel S. Perwin, P.A., and Joel S. Perwin, for appellee William Pruitt.

Before FERNANDEZ, LOGUE and SCALES, JJ.

SCALES, J.

Geico General Insurance Company (Geico) appeals a Final Summary Judgment holding Geico responsible for a sanctions judgment rendered against Geico's insured during the course of a personal injury lawsuit in which Geico's insured was the defendant. Because we conclude the sanctions judgment constituted a cost charged to Geico's insured in a covered lawsuit as contemplated in Geico's vehicle liability policy, we affirm.

## I. Relevant Factual and Procedural Background

### A. The Insurance Policy and the Accident

On November 2, 2005, Geico issued a renewal automobile liability policy for its insured, Oswaldo St. Blanchard (Blanchard). The Geico policy provided liability limits to Blanchard in the amounts of $10,000 for each claimant, with a limit of $20,000 per occurrence. Additionally, the policy covered all court costs charged to an insured in a covered lawsuit.

On December 22, 2005, Blanchard, while operating a motor vehicle covered under the Geico policy, struck pedestrians, Edelmida and Paulino Rodriguez—Appellees here and the plaintiffs below—near the intersection of SW 72nd Street and SW 97th Avenue in Miami. At the time of the accident, Blanchard was eighty-three years old.

## B. Geico's Tender of Policy Limits and Subsequent Dispute

While Geico immediately tendered its $20,000 policy limits, a dispute arose between Geico and the Rodriguezes' counsel regarding indemnification of Geico for medical liens resulting from the Rodriguezes' medical treatment.[1]

Unable to resolve this dispute, the Rodriguezes filed a negligence action against Blanchard in March 2006. Pursuant to the policy, Geico provided defense counsel for Blanchard.

## C. Blanchard Deposition and Subsequent Discovery

On March 7, 2007, approximately one year after the lawsuit was filed, the Rodriguezes deposed Blanchard. At his deposition, Blanchard testified that, at the time of the accident, Blanchard had no physical impairments that would prevent him from being a safe driver. Blanchard also testified he had no impairments that would have affected his vision at the time of the accident.

Shortly after the March 7 deposition, medical records produced in the case indicated that, contrary to Blanchard's deposition testimony, Blanchard was, at all times material, legally blind, had experienced significant vision problems, and had been advised by his treating physicians that he should not be driving.

---

[1] While not relevant to this appeal, the Rodriguezes assert that the dispute centered around Geico's insistence that the Rodriguezes' attorney personally execute a hold harmless/indemnity agreement as part of the settlement documents.

***D. Sanctions Motion***

In April 2007, the Rodriguezes filed a motion for sanctions against Blanchard, asserting that Blanchard's misrepresentations in his deposition constituted a fraud on the court. The Rodriguezes sought an order striking Blanchard's pleadings. The Rodriguezes also sought, as additional sanctions, the costs and attorney fees incurred by the Rodriguezes as a result of Blanchard's misrepresentations.[2]

In August 2007, the trial court held a hearing on the Rodriguezes' motion for sanctions, and in November 2007 entered an order detailing the significant discrepancies between Blanchard's deposition testimony, and the contrary facts established through the Rodriguezes' discovery. In its order, the court struck Blanchard's pleadings and granted the Rodriguezes leave to file an amended complaint to assert a claim for punitive damages. The trial court scheduled a hearing for April 21, 2008 to determine whether the Rodriguezes would be entitled to monetary sanctions.

---

[2] The Rodriguezes claimed that Blanchard committed a fraud on the court by falsely testifying that his vision was fine despite evidence establishing that Blanchard was legally blind. The Rodriguezes deposed approximately ten witnesses to prove the falsity of Blanchard's deposition testimony.

### E. Geico's Purported Reservation of Rights

In December 2007, Blanchard died, and in February 2008, William Pruitt (Pruitt) was substituted into the lawsuit for Blanchard as the personal representative of Blanchard's estate.

On April 17, 2008, just four days before the scheduled hearing on the Rodriguezes' request for monetary sanctions, Geico sent Pruitt a reservation of rights letter (ROR). In its April 2008 ROR, Geico stated:

> As a result of the conduct of Mr. Blanchard in this claim and/or during the accident lawsuit, there may be no coverage under GEICO's policy for this claim, for damages claimed in the accident lawsuit, for sanctions, and/or for fees or costs awarded in connection with sanctions.

Geico cited to the "Fraud and Misrepresentation" provision of the "General Conditions" of the Geico policy as the basis for its purported reservation of rights.

### F. Monetary Sanctions Imposed

Shortly after Geico issued its April 2008 ROR, on April 21, 2008, the trial court conducted the hearing on the Rodriguezes' motion to recover the costs and attorney fees incurred by the Rodriguezes as a result of Blanchard's misrepresentations. On May 13, 2008, the trial court entered an order granting the Rodriguezes' motion and ordering Pruitt, as the personal representative of Blanchard's estate, to pay the Rodriguezes sanctions in the amount of $22,050 for attorney fees and an additional $5,293.45 in costs.

5

On May 29, 2008, the trial court reduced its order into a judgment against Geico's insured (sanctions judgment).

Shortly thereafter, on June 6, 2008, Geico filed a lawsuit against the estate in federal court seeking a declaration that there is no insurance coverage available to the estate because of Blanchard's misrepresentations.

### G. Estate Hires New Counsel

Pruitt (the personal representative for Blanchard's estate) initially filed an appeal with this court of the sanctions judgment. However, after a dispute arose between Pruitt and defense counsel which Geico had provided to Pruitt, Pruitt retained new counsel and dismissed the estate's appeal of the sanctions judgment.

Geico offered Pruitt several choices to replace defense counsel, but Pruitt insisted that Geico retract its April 2008 ROR as a condition to Pruitt allowing Geico to control the estate's defense and agreeing to new counsel's representation of the estate. Geico would not agree to withdraw its April 2008 ROR, and, therefore, the estate proceeded with legal counsel selected solely by Pruitt.

After the entry of the sanctions judgment, the Rodriguezes filed an amended complaint against the estate and added Geico as a party defendant. In their amended complaint, the Rodriguezes sought an order requiring Geico to pay the sanctions judgment.

6

Pruitt, now represented by new counsel (and obviously not counsel retained by Geico), filed a cross-claim against Geico, seeking a declaration requiring Geico to provide indemnity to the estate for the sanctions judgment.

### H. Geico's Second ROR and the Stipulated Consent Judgments

On September 5, 2008, Geico issued to Pruitt a second ROR. The second ROR alleged that Pruitt's failure to agree to Geico's suggested replacement counsel constituted a breach of the estate's contractual duty to cooperate with Geico in the handling and defense of the Rodriguezes' liability claim against the estate.

Shortly thereafter, on October 1, 2008, at a calendar call on the underlying negligence action (i.e., the Rodriguezes' negligence claim against the estate), Pruitt's independent counsel and the Rodriguezes' counsel presented the trial court with a stipulation for the entry of two final judgments against the estate (consent judgments). The consent judgments totaled $750,000 ($500,000 consent judgment for Paulino Rodriguez and $250,000 consent judgment for Edelmida Rodriguez).

Subsequently, on October 31, 2008, Geico sent a letter to the estate refusing to defend the estate under the policy.

### I. Summary Judgment Motion and Resulting Final Summary Judgment

In August 2011, the Rodriguezes filed a motion for final summary judgment directed against Geico, alleging that Geico, pursuant to its policy, was responsible

7

to pay the sanctions judgment. The trial court heard argument in September 2011 and entered a Final Summary Judgment in favor of the Rodriguezes on October 19, 2011.

The trial court found that, pursuant to its policy of insurance issued to Blanchard, Geico was required to pay the sanctions judgment. The trial court reasoned that Geico's purported April 2008 ROR constituted a violation of Florida's Claims Administrations Statute—section 627.426, Florida Statues (2011) (the CAS). The trial court determined that Geico violated section 627.426(2)(a), which requires an insurer to assert a coverage defense within thirty days of the insurer becoming aware of the coverage defense, since Geico was aware of Blanchard's deposition misrepresentations in April 2007, yet Geico waited until April 2008 to issue its ROR.

The trial court further found that, because of Geico's violation of the CAS, the estate owed no duty of cooperation to Geico. Moreover, the trial court found that the sanctions judgment was a court cost charged to an insured in a covered lawsuit as contemplated by the Geico liability policy.

Geico timely appeals the Final Summary Judgment entered on behalf of the Rodriguezes with regard to these issues.[3]

_____

[3] The Rodriguezes and Pruitt filed separate lawsuits against Geico alleging that Geico is also responsible for payment of the consent judgments. While those actions were consolidated with this action by the trial court, the trial court abated those proceedings during the pendency of this appeal. Nothing herein should be

8

## II.    Analysis

The issue in this case is whether the trial court erred by granting the Rodriguezes' motion for final summary judgment which determined that Geico was responsible for the sanctions judgment entered against Geico's insured. We review the trial court's summary judgment *de novo*. See Sierra v. Shevin, 767 So. 2d 524, 525 (Fla. 3d DCA 2000).

Geico argues there is no insurance coverage available to the estate under its liability policy. Specifically, Geico asserts that the "Fraud and Misrepresentation" provision in its policy was implicated by Blanchard's deposition testimony so as to give Geico the right to void insurance coverage under the liability policy.

Geico essentially argues that the "Fraud and Misrepresentation" provision of its policy provides Geico with a "defense of no coverage" which, unlike a "coverage defense," does not require compliance with the CAS.

Because we hold that Blanchard's misrepresentations in his deposition testimony did not implicate the "Fraud and Misrepresentation" provision of the Geico policy, we need not decide the issue of whether that provision—*if implicated*— would provide Geico with a coverage defense (requiring compliance with the CAS) or constitute a "defense of no coverage" which would authorize Geico to void the policy outright.[4]

construed to, in any way, prejudge these claims, or prevent or foreclose Geico from presenting any applicable factual or legal defenses in those proceedings.

However, to better understand Geico's argument, and to provide guidance to insurers and claimants, we first provide the following brief analysis of the distinction between an insurer's "defense of no coverage" and an insurer's "coverage defense."

### A. Coverage Defense vs. Defense of No Coverage

Under different facts than those in the instant case, whether the "Fraud and Misrepresentation" provision of Geico's policy results in a "coverage defense"—as opposed to a "defense of no coverage"—is potentially significant.

If Blanchard's misrepresentations in deposition had implicated the provision, and the provision provided Geico with a "coverage defense," then Geico would have been obliged to comply with the provisions of the CAS. On the other hand, if Blanchard's deposition misrepresentations implicated the provision, and the provision provided Geico a "defense of no coverage," then Geico could void the policy outright and the CAS would not be applicable. AIU Ins. Co. v. Block Marina Inv., Inc., 544 So. 2d 998, 1000 (Fla. 1989).[5]

---

[4] We affirm the trial court's summary judgment requiring Geico to pay the sanctions judgment for somewhat different reasons than those articulated by the trial court. See Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 644-45 (Fla. 1999) (explaining "tipsy coachman" rule; if a trial court reaches the right result but for the wrong reason, an appellate court may uphold the result if there is any basis to support the judgment in the record).

[5] As articulated in AIU, the rationale for the distinction rests upon the Florida Supreme Court's determination that the CAS was "not intended to create coverage where a claim is made outside the effective date of the policy or where a particular

10

Again, though, since we hold that Blanchard's misrepresentation did not implicate the provision, this analysis is academic.

**B. *"Fraud and Misrepresentation Provision" of the Geico Policy***

Geico's "Fraud and Misrepresentation" provision reads, in its entirety, as follows:

> FRAUD AND MISREPRESENTATION
>
> *Coverage is not provided* to any person who knowingly conceals or misrepresents any material fact or circumstance *relating to this insurance*:
>
> 1. at the time application is made; or
> 2. at any time during the policy period; or
> 3. *in connection with the presentation or settlement of a claim.*

loss is expressly excluded from coverage." Id. at 999-1000 (citations omitted). Put another way, a violation of the CAS cannot create insurance coverage for a claim that otherwise is not a covered claim. One purpose of the CAS is to provide a mechanism for an insurer to notify an insured of an insurer's particular coverage defense of an otherwise covered claim. As the court expressed in AIU:

> [W]e hold that the term "coverage defense," as used in section 627.426(2), means a defense to coverage that otherwise exists. We do not construe the term to include a disclaimer of liability based on a complete lack of coverage for the loss sustained. Under this construction, for example, if the insurer fails to comply with the requirements of the statute, it may not declare a forfeiture of coverage which otherwise exists based on a breach of a condition of the policy. However, [the insurer's] failure to comply with the requirements of the statute will not bar an insurer from disclaiming liability where a policy or endorsement has expired or where the coverage sought is expressly excluded or otherwise unavailable under the policy or under existing law.

Id. at 1000.

(emphasis added).

Geico argues that Blanchard's misrepresentations in his deposition constituted a misrepresentation of material fact in connection with the presentation or settlement of a claim as contemplated by the provision.

Geico further argues that, based on the first four words of the provision ("coverage is not provided"), Blanchard's misrepresentations allowed Geico to void the policy *ab initio,* and therefore provided Geico a "defense of no coverage" not requiring compliance with the CAS.

While Geico might be correct that the provision, if implicated, may allow Geico to void coverage, Geico cites to no authority which would give an insurer the ability to void an otherwise valid insurance policy due to an insured's deposition testimony elicited during the course of litigation of a covered claim.

Geico suggests that the court should treat Blanchard's misrepresentation in the deposition similar to a misrepresentation on an application for insurance upon which the insurer detrimentally relies in issuing a policy. We decline Geico's invitation to read its "Fraud and Misrepresentation" provision so broadly.

At the outset, we are guided by the general rule that where language in an insurance policy is subject to differing interpretations, the court must construe the policy liberally in favor of the insured and strictly against the insurer. Flores v.

12

Allstate Ins. Co., 819 So. 2d 740, 744 (Fla. 2002). Hence, we are bound to interpret the provision in favor of the insured, i.e., the estate.

Geico argues that Blanchard's misrepresentations in deposition were made "in connection with the presentation or settlement of a claim," therefore implicating the provision. However, pursuant to the plain language of the provision, for any misrepresentations to implicate the provision, the misrepresentations must **relate to the insurance provided under the policy**. Nothing in the record indicates that Blanchard's deposition testimony was, in any way, related to the insurance Geico was providing Blanchard. While, in the deposition testimony elicited by the plaintiffs, Blanchard misrepresented his vision capabilities, the record is devoid of any misrepresentation by Blanchard, upon which Geico, in any way, detrimentally relied.

While the trial court specifically determined that Blanchard's misrepresentations went to the heart of Blanchard's liability for the accident, it cannot be seriously argued that Blanchard's misrepresentations in deposition in any way related to the *insurance coverage* provided by Geico. Indeed, there has been no factual finding that Blanchard's misrepresentations "related to" the insurance policy—an express condition precedent to implicate the subject provision.

We hold that Blanchard's misrepresentations during his deposition—even though they were characterized by the trial court as a "fraud on the court"—are not the type of misrepresentations contemplated by the "Fraud and Misrepresentation" provision in the Geico policy which would authorize Geico to void coverage under the policy *ab initio*. That provision plainly contemplates the ability of Geico to void coverage in the event an insured makes a material misrepresentation <u>to Geico</u> in order to obtain coverage that would otherwise not be available.

For example, if Blanchard had misrepresented the date of the accident in order to obtain coverage for a claim which occurred outside of the policy period, such a misrepresentation would have been "in connection with the presentment or settlement of a claim" and "related to this insurance" so as to trigger the provision.

Similarly, if Blanchard, in his application for insurance, had misrepresented to Geico his vision capabilities, and, as a result of the misrepresentation, Geico issued the policy which it otherwise would not have issued, that misrepresentation would also have been considered within the scope of the provision.

However, for Geico to argue the provision allows Geico to void an insurance policy based on an insured's misrepresentation in a deposition regarding a claim that is otherwise covered by the policy, would expand the provision far beyond its intended scope and could, conceivably, produce absurd results.

14

For example, if during the course of litigation, an insured insists that a stoplight was green, while a finder-of-fact ultimately determines the light was red, allowing an insurer to void the policy by suggesting the insured misrepresented a material fact certainly would undermine liability insurance coverage as we have come to know it.

Hence, since we have determined that Blanchard's misrepresentations, albeit material, did not "relate to" the liability insurance so as to implicate the provision, we need not reach the issue of whether Blanchard's misrepresentations in deposition triggered a "coverage defense"—requiring compliance with the CAS—or a "defense of no coverage" allowing Geico to void the policy. In sum, we hold that the policy provision relied upon by Geico to void coverage was not implicated by Blanchard's conduct; therefore, Geico's April 2008 ROR was ineffectual. We, therefore, do not reach the issue of whether Geico complied with the CAS.

### C. Geico's Second ROR

Geico also argues that Pruitt's lack of cooperation with Geico constituted a breach of the duty-to-cooperate provision of the insurance policy, authorizing Geico's denial of coverage for the sanctions judgment. Specifically, Geico asserts that Geico was within its rights to issue the second ROR in September 2008 – and to ultimately deny coverage on October 31, 2008 – when Pruitt conditioned

acceptance of replacement defense counsel on Geico's withdrawal of its April 2008 ROR.

After the withdrawal of initial defense counsel, Geico proffered several qualified attorneys to defend the estate in the litigation. On September 4, 2008, the estate's independent attorney notified Geico that the estate *would accept* one of the proffered defense attorneys, and turn over control of the estate's defense to Geico, on the condition that Geico "admits to insurance coverage, indemnifies [the estate for] the fee judgment pursuant to the insurance contract, [and] dismisses the coverage lawsuit . . . ."

Geico responded to this September 4 letter not by withdrawing the previously issued ROR, but by issuing a second ROR asserting an additional coverage defense. In its second ROR, Geico alleged that the estate's actions – i.e. conditioning acceptance of replacement counsel on Geico's withdrawal of its April 2008 ROR – constituted a breach of the insured's duty of cooperation owed to the insurer.

Appellees argue that, once Geico issued the April 2008 ROR—whether improvidently or not—the insured no longer owed any duty to cooperate with Geico. Appellees suggest that, once the insurer asserts a reservation of rights, even, as here, when the insurer continues to defend the insured under the reservation of

16

rights, the insured has the right to "buy its own peace," control its own defense, and settle with the plaintiffs.

### D. Insured's Duty to Cooperate

Against this factual backdrop, we agree with Appellees that, once Geico issued its April 2008 ROR, Geico's insured no longer owed Geico a duty of cooperation. Taylor v. Safeco Ins. Co., 361 So. 2d 743, 745 (Fla. 1st DCA 1978) ("[T]he insured is not required to abandon control of his own defense as the price of preserving his claim, disputed by the insurer, that the insurer pay any judgment."); Nationwide Mut. Fire Ins. Co. v. Beville, 825 So. 2d 999, 1003 (Fla. 4th DCA 2002) ("[A] carrier's unilateral defense under a reservation of rights is similar to a refusal to provide any defense at all in its effect on the insured. In either case, the carrier has violated its duties under the policy unconditionally to defend and indemnify its insured within specified limits.").

In sum, under the facts of this case, the estate's conditioning its acceptance of replacement legal counsel upon Geico's withdrawal of Geico's April 2008 ROR did not constitute a violation of the estate's contractual duty to cooperate. This is true especially in light of the fact that, as we have held, Geico's April 2008 ROR was based on an inapplicable policy provision, and the fact that Geico had filed a federal lawsuit against its insured seeking a declaration that there was no coverage for the estate under the Geico policy.

### E. *The Estate's Dismissal of the Sanctions Judgment Appeal*

As referenced earlier, the estate initially appealed the sanctions judgment. Geico argues that the estate's insistence that Geico withdraw its April 2008 ROR, and the estate's refusal to consent to replacement counsel, ultimately resulting in the dismissal of the appeal of the sanctions judgment, constituted a lack of cooperation severely prejudicing Geico.

Put another way, Geico argues it would be inequitable to hold Geico responsible for the sanctions judgment when Geico was effectively precluded from prosecuting the appeal of same. However, under Taylor and Beville, the estate had the right to control the defense of the case given (i) Geico's improvidently issued April 2008 ROR and Geico's steadfast refusal to withdraw same and (ii) Geico's initiation of litigation against its insured.

Hence, any prejudice suffered by Geico as a result of the coverage dispute between Geico and the estate was invited by Geico's insistence on conditioning any defense of the estate on maintaining its reservation of rights to deny coverage to its insured.

### F. *Coverage for the Sanctions Judgment Under the Geico Policy*

Having held that the trial court correctly determined that Geico's April 2008 ROR was ineffectual and improvidently issued, resulting in the ability of the estate

to exercise control of the defense of this case, we now turn to the ultimate issue of whether the Geico policy covered the sanctions judgment.

The relevant portion of the Geico policy reads as follows:

ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

. . . .

2. *All* court costs charged to an ***insured*** in a covered law suit.

(first emphasis added).

Hence, pursuant to the unambiguous language of the policy, Geico agrees to pay ***all*** court costs charged to an insured in a lawsuit which is covered under Geico's policy.

Since we have determined that the underlying negligence action was a "covered lawsuit," we turn to the issue of whether the sanctions judgment constituted a "court cost" as contemplated in the policy.[6]

Given this court's precedent that (i) costs may be chargeable to a liability insurance carrier[7] and (ii) insurance policies are to be liberally interpreted in favor of coverage,[8] coupled with the fact that the instant policy does not define court

_____

[6] We note the term "court costs" is not defined in the policy.

[7] See Tri-State Ins. Co. of Minn. v. Fitzgerald, 593 So. 2d 1118 (Fla. 3d DCA 1992); Pac. Employers Ins. Co. v. Hofrichter, 670 So. 2d 1023 (Fla. 3d DCA 1996).

[8] See Bethel v. Sec. Nat'l Ins. Co., 949 So. 2d 219, 223 (Fla. 3d DCA 2006)

costs, we cannot find error in the trial court's holding that the Geico policy provides coverage for sanctions entered against the insured as an additional cost of the litigation.

### G. Geico's Equitable/Public Policy Argument

Finally, we are not unsympathetic towards Geico's argument that, as a matter of public policy, a liability insurer should not be responsible for monetary sanctions imposed when an insured makes misrepresentations during discovery. However, during the year that elapsed between Blanchard's deposition and Geico's issuance of its April 2008 ROR, Geico controlled Blanchard's defense, and, therefore, was in a better position than Blanchard (or the Rodriguezes) to mitigate any effects of its insured's misrepresentations. Also, since the Rodriguezes' claim was covered under the Geico policy, Geico stood to potentially benefit from Blanchard's misrepresentations as Blanchard's testimony plainly addressed Blanchard's liability for the accident, rather than any issue regarding insurance. Finally, we are aware of no impediment which would have prohibited Geico from clarifying in its liability policy that monetary sanctions resulting from an insured's intentional misrepresentations during discovery made without the knowledge or

(stating insurance policies are to be constructed in favor of the insured and insurance coverage); Rabatie v. U.S. Sec. Ins. Co., 581 So. 2d 1327, 1329 (Fla. 3d DCA 1989); Shelby Mut. Ins. Co. of Shelby, Ohio v. Manchester, 376 So. 2d 266, 268 (Fla. 3d DCA 1979) ("[W]hen the terms of an insurance policy are capable of two or more constructions, the construction permitting recovery is to be given effect.").

consent of Geico are not considered a "court cost" under the "additional payments" provision of the Geico policy.

### III.  Conclusion

The insurance policy issued by Geico to Blanchard covered the automobile accident. While Blanchard's misrepresentations in his deposition constituted sanctionable conduct, they are not the type of material misrepresentations "relating to insurance" that would implicate the "Fraud and Misrepresentation" provision of the Geico policy. Hence, Geico's attempt to void the policy based on those misrepresentations was ineffectual. Geico's April 2008 ROR issued to Blanchard's estate, purporting to disclaim coverage to the estate based on Blanchard's misrepresentations, was ineffectual and allowed Blanchard's estate to take control over the litigation, despite Geico's willingness to continue to provide a defense, albeit subject to their reservation of rights.

Since the sanctions judgment was a court cost charged to Blanchard as part of a lawsuit covered by Geico's policy, the Geico policy provided coverage to Blanchard's estate for the sanctions judgment. We therefore affirm the trial court's summary judgment determining that Geico is responsible for payment of the sanctions judgment. We reiterate, however, that we do not reach the issue of whether Geico is exposed to liability for the consent judgments in excess of its policy limits.

Affirmed.