ROTHENBERG, J.
Delia Reyes (“Reyes”) appeals: (1) the probate court’s order granting Infinity Indemnity Insurance Company’s (“Infinity”) motion to intervene in the probate proceedings in the Estate of Jorge Luis Arroyo, Jr. (“the Estate”); (2) the probate court’s subsequent order finding that the personal representatives of the Estate did not have the authority to settle Reyes’s lawsuit against the Estate by entering into a Coblentz agreement [1]; and (3) the circuit court’s final judgment incorporating its order granting summary judgment in favor of Infinity on Reyes’s bad-faith claim against Infinity.
We reverse the probate court’s orders granting Infinity’s motion to intervene and its subsequent determination regarding the authority of the personal representatives to settle Reyes’s lawsuit because Infinity’s alleged interest was not at issue in the probate proceedings at the time Infinity moved to intervene. We also conclude that even if intervention was properly granted, the probate court erred by determining the authority of the personal representatives to settle Reyes’s lawsuit because when Reyes filed the lawsuit against the Estate, and the Estate tendered its defense to Infinity, its insurer, Infinity declined to defend the claim..Thus, the defenses Infinity subsequently raised in the probate court were barred and Infinity was prohibited from raising these defenses as a matter of law. We similarly find that the circuit court erred by considering and then granting Infinity’s motion for summary judgment based on these barred defenses in the bad-faith lawsuit against Infinity. Accordingly, we reverse all three orders on appeal.
BACKGROUND
As the result of a car accident on October 9, 2009, Jorge Luis Arroyo, Jr. (“Arroyo”) died and Reyes suffered severe incapacitating injuries. Arroyo’s parents petitioned the probate court to open the Estate and to act as the Estate’s personal representatives, which the probate court granted in January 2011.
On February 11, 2011, Reyes filed a personal injury negligence lawsuit (“the negligence lawsuit”) in the circuit court against the Estate, but never filed a written claim in the probate court. Although the Estate tendered the defense of the *243 negligence claim to Infinity, ■ Infinity declined to defend the claim. In January 2018, the Estate settled the negligence lawsuit by entering into a Coblentz agreement with Reyes, in which Reyes and the Estate agreed to the entry of a consent judgment, Reyes agreed not to execute the judgment against the Estate, and the Estate assigned any rights it had against Infinity to Reyes. After Reyes and the Estate entered into the Coblentz agreement and obtained the consent judgment, Reyes sued Infinity in circuit court pursuant to the assignment of rights provision in the Coblentz agreement, alleging in part that Infinity had demonstrated bad faith by failing to defend the Estate in the negligence lawsuit (“the bad-faith lawsuit”).[2]
Infinity attacked the bad-faith claim on two fronts. First, Infinity moved for entry of summary judgment in the circuit court’s bad-faith lawsuit, arguing that, because Reyes failed to file a statement of claim in the probate court regarding the negligence lawsuit, she could no longer do so because the negligence lawsuit was barred by the statute of limitations, § 733.702, Fla. Stat. (2011), and the statute of repose, § 733.710, Fla. Stat. (2011), set forth in the probate code. Accordingly, Infinity claimed that: (1) the Estate was immune from Reyes’s negligence suit at the time the personal representatives of the Estate settled the lawsuit; (2) the Coblentz agreement and the subsequent consent judgment were therefore unenforceable against the Estate; (3) the Estate was not exposed to an excess judgment because neither the Coblentz agreement nor the consent judgment were enforceable against the Estate; and (4) in order for Reyes to succeed in its bad-faith claim against Infinity, the Estate would need to be exposed to an excess judgment. Thus, Infinity contended that Reyes’s bad-faith claim against Infinity failed because Reyes, standing as the as-signee of the Estate, could not prove that the Estate was exposed to an excess judgment.
Infinity’s second front for attacking the bad-faith claim was waged in the probate court. Infinity filed a motion for leave to intervene in the Estate proceedings pursuant to Florida Rule of Civil Procedure 1.230 for the purpose of determining whether the Estate’s personal representatives had the authority to settle the negligence lawsuit in the circuit court by entering into the Coblentz agreement. When Infinity moved to intervene, the Estate’s proceedings in probate court were uncontested, with no adversarial motions pending before it and minimal record activity. The probate court granted Infinity’s motion to intervene after concluding that Infinity was an interested party regarding the Coblentz agreement, but limited Infinity’s intervention to the issue of “the applicability of Part VI of Florida Statute Chapter 733 to the Personal Representative’s execution of the Settlement Agreement.” Infinity then filed a motion to determine the personal representatives’ right to enter into the Coblentz agreement (“motion to determine”), and Reyes was also permitted to intervene to oppose this motion.
After allowing Infinity to intervene, the probate court ruled on Infinity’s motion to determine and entered an order finding that section 733.710 of the Florida Statutes protects an estate from any claim filed more than two years after the death of the decedent, and that Reyes failed to file a claim against the Estate within two years *244 of Arroyo’s death. Accordingly, the probate court concluded that the personal representatives did not have the authority to enter into the Coblentz agreement in'the negligence lawsuit because at the time the personal representatives entered into the Coblentz agreement, the Estate enjoyed absolute, immunity from Reyes’s claim, and thus, the consent judgment was unenforceable against the Estate.[3] Reyes has appealed this order and the order granting Infinity’s motion to intervene.
■ Meanwhile, although the original circuit court judge denied Infinity’s motion for summary judgment, a successor circuit court judge reconsidered Infinity’s motion and entered a written order granting Infinity’s motion for summary judgment. The successor circuit court judge concluded that “Reyes’s bad[-]faith claim against Infinity was dependent upon the Estate being liable for the consent judgment in excess of any policy limits,” and thus, “Reyes’s failure to timely file a claim against Arroyo’s Estate relieved the Estate of any liability for the consent judgment.” The circuit court’s order concluded that a bad-faith claim requires the insured to be exposed to an excess judgment,[4] and, because the consent judgment could not be the source of an excess judgment against the Estate, Reyes’s bad-faith claim against Infinity failed as a matter of law.
Reyes and Infinity entered into a stipulation pending this appeal voluntarily dismissing the breach of contract claim in the complaint without prejudice. Thereafter, the circuit court entered a final judgment, and Reyes timely appealed. We have consolidated the two appeals from the circuit court and probate court orders.
ANALYSIS
1. The Probate Court’s Orders
Infinity moved to intervene pursuant to Florida Rule of Civil Procedure 1.230. Rule 1.230, however, does not apply to the probate proceedings in this case because Florida Probate Rule 5.010 precludes the application of the Florida Rules of Civil Procedure unless provided for within the Florida Probate Rules. The only Florida Probate Rule incorporating rule 1.230 is rule 5.025(d)(2), which states that in an adversary probate proceeding, “[t]he Florida Rules of Civil Procedure govern, except for rule 1,525.” There is no equivalent probate rule that would allow the application of rule 1.230 in non-adversary probate proceedings. It is, therefore, clear that in a non-adversary proceeding in probate court, rule 1.230 does not govern, and because the Estate’s probate proceedings were dormant and non-adversarial when Infinity moved to intervene, Infinity could not rely on rule 1.230 to intervene in the probate proceedings. Accordingly, it was reversible error for the probate court to grant Infinity’s motion to intervene pursuant to rule 1.230, See Zayas-Hood v. Jusino, 44 So.3d 626 (Fla. 1st DCA 2010) (reversing the probate court’s order suspending a prior order and holding that Florida Rule of Civil Procedure 1.540 was not available in a non-adversary probate proceeding because it was not provided for within the Florida Probate Rules),
*245 Were it not for preservation and waiver issues, we would have reversed the probate court’s order granting Infinity’s motion to intervene based on rule 5.010 alone.[5] However, Reyes failed to properly preserve this error for appeal. Reyes failed to raise this rule 5.010 argument before the probate court and also failed to raise it in her initial brief. Because Reyes failed to object to the applicability of rule 1.280 in the probate proceedings, we have evaluated the probate court’s order granting intervention by examining the law relating to rule 1.230 and find that even if rule 1.230 applied, the probate court erred by granting Infinity’s motion to intervene where Infinity’s interest was not already at issue in the proceedings.
Florida Rule of Civil Procedure 1.230 grants courts broad discretion when considering motions to intervene, and it provides as follows: “Anyone claiming an interest in pending litigation may at any time be permitted to assert a right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding, unless otherwise ordered by the court in its discretion.” However, “the trial court’s discretion is not unbounded,” Grimes v. Walton Cnty., 591 So.2d 1091, 1093-94 (Fla. 1st DCA 1992). Trial courts are required to consider whether the prospective inter-venor has an interest in the proceedings. Union Cent. Life Ins. Co. v. Carlisle, 593 So.2d 505, 507 (Fla. 1992). “In order for a party to intervene, its interest must be in the matter in litigation, and of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment.” Omni Nat’l Bank v. Georgia Banking Co., 951 So.2d 1006, 1007 (Fla. 3d DCA 2007) (internal quotation omitted).
Importantly, a party’s asserted interest must already be at issue in the proceedings when the party seeks to intervene. Carlisle, 593 So.2d at 507 (holding that “the interest must be that created by a claim to the demand in suit or some part thereof ... which is the subject of litigation”) (quoting Morgareidge v. Howey, 75 Fla. 234, 78 So. 14, 15 (1918); Y.H. v. F.L.H., 784 So.2d 565, 568 (Fla. 1st DCA 2001)); 84 Lumber Co. v. Cooper, 656 So.2d 1297, 1299 (Fla. 2d DCA 1994) (stat *246 ing that “intervention under [rule 1.230] assumes an interest in pending litigation which shall be in subordination to, and in recognition of, the propriety of the main proceeding”) (internal quotation omitted). Additionally, a contingent interest in the proceedings, as opposed to a direct and immediate interest, will not justify a party’s intervention. Harbor Specialty Ins. Co. v. Schwartz, 932 So.2d 383, 387 (Fla. 2d DCA 2006); Grimes, 591 So. 2d at 1094 (holding that the trial court abused its discretion by granting a motion to intervene where the intervenors “would not stand to gain or lose by direct legal operation and effect of the judgment” in the action).
In the instant case, Infinity’s interest regarding the validity of the Coblentz agreement was not already at issue before the probate court at the time Infinity moved to intervene. Infinity alleged that it had an interest in the probate proceedings because its rights in the bad-faith lawsuit would be affected by the validity of the Coblentz agreement. However, as stated above, when Infinity moved to intervene, there were no adversarial proceedings in the probate court, the probate court was not considering the validity of the Coblentz agreement, and there was no attempt to enforce the consent judgment in the probate court—nor could there be based on the covenant in the Coblentz agreement not to enforce the consent judgment against the Estate. Thus, when Infinity moved to intervene for the purpose of attacking the personal representatives’ authority to enter into the Coblentz agreement, Infinity was injecting a new issue into the proceedings. This it could not do. See Envtl. Confederation of S.W. Fla., Inc. v. IMC Phosphates, Inc., 857 So.2d 207, 211 (Fla. 1st DCA 2003) (finding, that an intervenor may not inject a new issue into the case and must accept the record and pleadings as they exist in the litigation).
We, therefore, find that under both Florida Probate Rule 5.010 and Florida Rule of Civil Procedure 1.230, the probate court abused its discretion by granting Infinity’s motion to intervene. We also recognize the rule that if “it was error to allow intervention, it [will also be] error to allow the intervenors to file their motion ... and then grant the motion,” Grimes, 591 So.2d at 1094-95. Thus, because it was error to allow Infinity to intervene, it was also error to allow Infinity to file its motion to determine and to subsequently adjudicate the motion.
However, even if we had found that Infinity’s motion to intervene was properly before the probate court, we would have concluded that the probate court erred by allowing Infinity to raise defenses that it could have raised if it had defended the Estate from Reyes’s negligence lawsuit prior to the entry of the Coblentz agreement and the consent judgment. As will be discussed more fully in the next section, when an insurer refuses to defend its insured from a lawsuit, and the insured later settles the suit by entering into a Coblentz agreement, the insurer* is precluded from relitigating the issue of its insured’s liability in subsequent proceedings. Gallagher v. Dupont, 918 So.2d 342, 348 (Fla. 5th DCA 2005); Ahern v. Odyssey Re (London) Ltd., 788 So.2d 369, 372 (Fla. 4th DCA 2001). Accordingly, Infinity was absolutely prohibited from raising any defenses on behalf of its insured in the probate court’s proceedings that it could have raised had it chosen to- defend the Estate from Reyes’s negligence lawsuit. Infinity’s arguments to the probate court regarding the effect of the time-bars in the probate code on the validity of Reyes’s lawsuit is a defense that should have properly been raised when Reyes’s *247 lawsuit against the Estate was still pending. Therefore, the probate court erred by determining the authority of the personal representatives to enter into the Coblentz agreement because its order was based upon defenses that Infinity was barred from raising as a matter of law.[6]
2. The Circuit Court’s Order
We review the trial court’s order granting Infinity’s motion for summary judgment in the bad-faith lawsuit de novo. Geico Gen. Ins. Co. v. Rodriguez, 155 So.3d 1163, 1167 (Fla. 3d DCA 2014). “Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law.” Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla. 2000).
As stated above, Reyes and the Estate entered into a consent judgment pursuant to a Coblentz agreement. Reyes subsequently sought to enforce the consent judgment against Infinity by filing a bad-faith action against Infinity. Therefore, we analyze the order granting summary judgment to determine whether the circuit court correctly applied the law pertaining to the enforcement of consent judgments in the context of a Coblentz agreement.
In order to enforce a consent judgment entered pursuant to a Coblentz agreement, the assignee must bring an action against the insurer and prove: (1) insurance coverage, (2) the insurance company wrongfully refused to defend its insured, and (3) the settlement was reasonable and made in good faith. Mid-Continent Cas. Co. v. Royal Crane, LLC, 169 So.3d 174, 180 (Fla. 4th DCA 2015); Gallagher, 918 So.2d at 348; Indep. Fire Ins. Co. v. Paulekas, 633 So.2d 1111, 1114 (Fla. 3d DCA 1994).
It is axiomatic that a Coblentz agreement establishes the insured’s liability. Mid-Continent Cas. Co., 169 So.3d at 181— 82 (“The notion is that the settlement establishes the insured’s liability, but not the insurer’s obligation of coverage.”). The subsequent entry of a consent judgment is conclusive against the insurer as to all matters determined in the judgment. Gallagher, 918 So.2d at 348. Thus, in the proceedings to enforce the consent judgment, the insurer is not permitted to assert any defense that it could have raised in the underlying lawsuit between the assignee and the insured. Indep. Fire Ins. Co., 633 So.2d at 1114 (“[The insurer] was not permitted to assert all of the defenses which could have been asserted in the underlying cause of' action ....”); Gallagher, 918 So.2d at 348 (holding that “the insured’s liability has been established *248 by the settlement, and the insurer may not later relitigate the issue”).
The circuit court’s order granting summary judgment was premised, as was the probate court’s order to determine, on Infinity’s argument that Reyes’s negligence lawsuit against the Estate was time-barred pursuant to the probate code. The circuit court’s analysis, like the probate court’s analysis, however, overlooked the fact that the Coblentz agreement and the consent judgment conclusively established that the Estate was liable, and that Infinity was barred from raising any of the defenses that it could have raised had it chosen to defend the Estate in the negligence lawsuit. Because Infinity could have raised its arguments with regard to the probate code if it had defended the Estate in the negligence lawsuit proceedings, Infinity is barred from subsequently raising them as a defense in order to contest the validity of the consent judgment in the probate court and in the circuit court bad-faith lawsuit. We therefore find that the circuit court erred when it granted summary judgment in favor of Infinity based on Infinity’s legally barred probate code defenses. ,
In response to the abundant case law precluding insurers from raising defenses in a subsequent proceeding, which it had the opportunity to raise, but failed to raise in the prior proceeding because, after having received notice, the insurer declined to defend the insured, the dissent seizes upon language in May v. Illinois National Insurance Co., 771 So.2d 1143 (Fla. 2000), to argue that as to this particular defense, this well-developed body of law does not apply. However, that is not what May holds.
Although the Florida Supreme Court in May held that section 733.702 “is a statute of limitations that cannot be waived in a probate proceeding by failure to object to a claim on timeliness grounds,” and section 733.710 “is a jurisdictional statute of non-claim that is not subject to waiver or extension in a probate proceeding,” May, 771 So.2d at 1145, the operative words in both findings are “in a probate proceeding.” (emphasis added). As the Court clearly explained in its footnote following these findings, its holding was limited to actions brought in probate court against the estate:
As with section 733.702, we determine that an estate may waive the time period set forth in section 733.710 in a separate action outside of the probate proceedings. However, unlike section 733.702, a creditor that has obtained a judgment in a separate action cannot recover against the estate unless the creditor has filed a claim in the probate proceedings within two years of the decedent’s death. This is so because the probate court lacks the authority to extend the time period set forth in section 733.710.
Id. at n,12 (emphasis added). It is thus clear that the Estate in the instant case had the authority to' “waive the time period set forth in section 733.710 in a separate action outside of the probate proceedings,” which was in the personal injury lawsuit in the circuit court. However, any judgment obtained by the plaintiff (Reyes) could not be levied against the Estate in the probate proceedings because no claim had been filed in probate court during the limitations period. Reyes, however, is not attempting to seek redress against the Estate in the probate court. The Estate entered into a Coblentz agreement with Reyes wherein the parties agreed to the entry of a consent judgment, Reyes agreed not to execute the judgment against the Estate, and the Estate assigned its rights to Reyes to pursue a bad-faith lawsuit against Infinity for failing to defend the Estate in the negligence lawsuit.
*249 Had Infinity elected to defend the Estate, as it was asked, it could have objected to the entry of the Coblentz agreement and the consent judgment, raised the failure of Reyes to timely file his claim in probate court, asserted defenses including the statutory limitations bar to recovery against the Estate, and as counsel for the Estate simply have refused to the entry of both. But, Infinity declined to defend the Estate, the Estate waived the time period set forth in section 733.710 in the circuit court negligence lawsuit, and assigned its rights to Reyes to pursue the Estate’s bad-faith claim against Infinity in a totally separate circuit court action. While there are many defenses which may be available to Infinity in the bad-faith lawsuit, including its coverage defense, it is too late for Infinity to now appear in the negligence lawsuit it declined to defend in order to raise defenses it could have raised had it agreed to defend the Estate. And, as already addressed, under both Florida Probate Rule 5.010 and Florida Rule of Civil Procedure 1.230, the probate court had no authority to allow Infinity to intervene for the purpose of raising these defenses.
The dissent also relies on Wald v. State Farm Mutual Automobile Insurance Co., 2013 WL 9636854 (M.D. Fla. July 25, 2013). This Court is not bound by a decision rendered by the United States District Court, and Wald is distinguishable, Wald is distinguishable because it did not involve a Coblentz agreement. It is also unpersuasive because the United States District Court failed to consider footnote 12 in May.
In applying Florida law, the Fifth Circuit in Coblentz held that an insurer that wrongfully declines to defend its insured is barred from challenging a judgment entered against its insured absent a finding of fraud or collusion.
Where either an indemnitor or liability insurer has notice of a proceeding against his indemnitee or insured, and is afforded an opportunity to appear and defend, a judgment rendered against the indemnitee or insured, in the absence of fraud or collusion, is conclusive against the indemnitor or insurer as to all material matters determined therein.
Coblentz, 416 F.2d at 1062-63. In Coblentz, the insurance company argued that since the judgment did not legally obligate its insured to pay anything, it could not obligate the insurance company to pay anything. In rejecting the insurer’s argument, the Coblentz court held that the insurer had been afforded the opportunity to defend the action; however, it had repudiated its obligation to defend, and thus the judgment obtained, if obtained without fraud or collusion, was conclusive against the insurer. Id at 1063.
We conclude that although the consent judgment in the instant case is not enforceable against the Estate based on the express terms of the Coblentz agreement and because Reyes did not file a claim against the Estate in the probate court within the two-year limitations period, it is enforceable against Infinity if coverage is established and there was no fraud or collusion. Our conclusion is fully supported by not only footnote 12 in May, but also by the Fourth District Court of Appeal’s decision in Pezzi v. Brown, 697 So.2d 883 (Fla. 4th DCA 1997).
In Pezzi, the Fourth District held that the plaintiffs failure to comply with sections 733.702 and 733.710 did not place limitations on the plaintiffs ability to recover against the decedent’s insurer. Id. at 886. Specifically, the Fourth District held that the jurisdictional limitation under section 733.710 “is specific to the decedent’s estate, the personal representative, and the beneficiaries; the limitation does not *250 extend to the decedent’s insurance policy.” Id. at 885 (emphasis added).
In reaching this conclusion, the Fourth District was “guided by the principle that statutes restricting access to the courts must be narrowly construed in a manner favoring access.” Id. at 886 (citations omitted). Thus, the court held that while:
Section 733.10 represents a decision by the legislature that 2 years from the date of death is the outside limit to which a decedent’s estate in Florida should be exposed by claims on the decedent’s assets ... [t]here is no indication that section 733.10 represented a legislative decision to undermine the rights of plaintiffs to recover under tort-feasors’ insurance policies.
Id. at 886 (quotations, citations, and emphasis omitted). In support of its interpretation of sections 733.702 and 733.710, the court noted that the purpose of these time limitations is “to promote ‘the public policy of providing for the speedy settlement of estates’ in order that ‘the payment of claims and the distribution to beneficiaries [not] be substantially delayed or disrupted.’ ” Id. at 886 (quoting Spohr v. Berryman, 589 So.2d 225, 228 (Fla. 1991)).
In conclusion, the Fourth District in Pezzi held that, because the plaintiff was not seeking recovery from the estate’s assets, the personal representative individually, or the beneficiaries, “[n]either section 733.702 nor section 733.710 precludes plaintiffs from bringing this cause of action and recovering to the extent that [the deceased tortfeasor] was covered by liability insurance.” Pezzi, 697 So.2d at 886.
We note that May, which was decided by the Florida Supreme Court well after the Fourth District Court -of Appeal decided Pezzi, did not overrule Pezzi, and in fact, based upon footnote 12 in May, the Florida Supreme Court apparently agreed with the Pezzi court.
The Estate’s interests are protected twice over in this case. The Coblentz agreement protects the assets of the Estate by preventing Reyes from recovering against the Estate even without the application of section 733.710. A separate bad-faith lawsuit against Infinity poses no threat to the Estate, its beneficiaries, or its creditors. If Reyes ever attempts to recover from the Estate, then her claim will be barred not only by the Coblentz agreement, but also by the effect of section 733.710.
CONCLUSION
In conclusion, we reverse the probate court’s order permitting Infinity to intervene in the Estate’s probate proceedings because Infinity’s interest was not at issue before the probate court prior to the filing of the motion to intervene. Because the probate court erred by permitting Infinity to intervene, we also reverse the probate court’s subsequent order on Infinity’s motion to determine. We also reverse the probate court’s order on Infinity’s motion to determine because it was based on defenses that Infinity was prohibited from raising as a matter of law. Lastly, we reverse the circuit court’s order granting Infinity’s motion for summary judgment and the subsequently entered final judgment in the bad-faith lawsuit because they were also premised on defenses that Infinity could have raised but failed to raise in the underlying litigation that led to the Coblentz agreement.
Reversed and remanded.
LAGOA, J., concurs.

. See Coblentz v. Am. Surety Co. of New York, 416 F.2d 1059 (5th Cir. 1969).

. Reyes also sued Insurance USA & Associates, Inc. and Nicole Marie Antini, but those claims were later voluntarily dismissed without prejudice' and are not at issue in this appeal.

. The probate court’s conclusion that the consent judgment was unenforceable against the Estate was redundant because the clear terms of the Coblentz agreement had already rendered the consent judgment unenforceable against the Estate.

. Although we need not address this issue in reaching our decision, we note that there are many types of bad-faith causes of action that do not require the insured to be exposed to an excess judgment at the time a bad-faith claim is filed. See Perera v. U.S. Fid. & Guar. Co., 35 So.3d 893, 899-901 (Fla. 2010).

. The dissent argues that, while a rule 1.230 motion to intervene is not typical in probate court, Infinity only filed the motion because Reyes’s counsel and the personal representatives failed to comply with the: proper probate procedures by failing to designate Infinity as an interested party and by failing to notify Infinity (as an interested party) of Reyes’s negligence lawsuit and the Coblentz agreement. Thus, the .dissent opines that Infinity would not have needed to file a motion to intervene to contest the bad-faith litigation had the proper procedures been complied with because Infinity would have already known about the negligence suit and settlement.
First, we note that there is no exception in rule 5,010 that would allow Infinity to use the Florida Rules of Civil Procedure based upon the personal representatives' failure to comply with the proper procedures. Thus, the dissent’s argument is legally irrelevant. Second, contrary to the dissent’s suggestion, there is no indication in the record that Infinity was surprised by Reyes’s negligence lawsuit, In fact, Infinity concedes in its answer brief that it received notice of Reyes’s negligence lawsuit because it admits that the Estate tendered the defense of the negligence lawsuit to Infinity, and Infinity refused to provide a defense prior to the execution of the Coblentz agreement. If Infinity was concerned about its exposure to a subsequent bad-faith suit, it should have defended the Estate. “While an insurance company is within its rights in a thorough investigation to determine whether the accident in question comes within coverage of its policy, the company acts at its peril in refusing to defend its insured and will be held responsible for the consequences.” Gallagher v. Dupont, 918 So.2d 342, 347 (Fla. 5th DCA 2005).

. Although we have reversed the probate court's order granting Infinity’s motion to intervene on procedural and waiver grounds, we briefly respond to an issue raised in the dissent that was not raised by the probate court or any of the parties. The dissent suggests that section 733.708, Florida Statutes (2011), governs a personal representative's authority to enter into a settlement agreement. Thus, the dissent argues that pursuant to section 733.708, a personal representative is required to obtain approval from the probate court prior to settling a claim. We disagree. The dissent misapprehends the purpose and effect of section 733.708, which provides that a personal representative may avoid personal liability when compromising a. claim against the estate if the personal representative obtains a court order approving the compromise. "The failure to secure such an order does not preclude a compromise however, the personal representative remains subject to the possibility of liability.” Sec. Ins. Co. v. Estate of Stillson, 397 So.2d 1206, 1207 (Fla. 1st DCA 1981) (emphasis added). Thus, in addition to the fact that this argument was not raised by the parties either below qr on* appeal, this argument is unavailing on the merits.