Joseph **BRADFIELD** and Patricia Bradfield, Plaintiffs,

v.

**MID–CONTINENT CASUALTY COMPANY**, Defendant.

Case No. 5:13–CV–222–OC–10PRL.

United States District Court, M.D. Florida, Ocala Division.

Signed April 21, 2014.

Edward P. Jordan, II, Edward P. Jordan, II, PA Law Office, Clermont, FL, for Plaintiffs.

Ronald L. Kammer, Melissa A. Gillinov, Hinshaw & Culbertson, LLP, Coral Gables, FL, James H. Wyman, Hinshaw & Culbertson, LLP, Miami, FL, for Defendant.

## ORDER

PHILIP S. LAMMENS, United States Magistrate Judge.

This matter is before the Court on Plaintiffs Joseph and Patricia Bradfield's ("the Bradfields") Amended Motion for Protective Order (Doc. 49) relating to documents that they contend were inadvertently produced to Defendant Mid–Continent Casualty Company ("Mid–Continent") by a third-party pursuant to a subpoena. Mid–Continent has filed a response in opposition. (Doc. 57). For the following reasons, the Bradfields' Motion (Doc. 49) is due to be **DENIED**.

### I. Background

On August 29, 2012, Plaintiffs sued Horgo Signature Homes, Inc., ("Horgo Signature") and Winfree Homes, Inc. ("Winfree") in state court seeking damages for alleged structural defects in the construction of their custom home (the "Underlying Complaint").[1] According to the Bradfields, both Horgo Signature and Winfree maintained general liability insurance policies through Mid–Continent[2] and request-

---

1. A copy of the Underlying Complaint is filed at Doc. 28–1.

2. Mid–Continent contends that Horgo Signature was not an insured. *See e.g.,* Doc. 57 at 1. The insurance policy attached to the Complaint identifies the named insured as "Horgo

ed that Mid–Continent undertake their defense and indemnify them from any damages arising from the Bradfields' claims. Mid–Continent refused to defend or indemnify Horgo Signature and Winfree claiming that they had no obligation to do so under the existing policies. On February 21, 2014, the Bradfields, Horgo Signature, and Winfree attended a mediation conference. They notified Mid–Continent of the mediation conference but Mid–Continent did not attend. The Bradfields, Horgo Signature, and Winfree ultimately negotiated a Mediated Settlement Agreement (Doc. 2, Exhibit H) and on March 11, 2013, the state court entered a Consent Final Judgment in favor of the Bradfields. (Doc. 2, Exhibit I). The Consent Final Judgment ratified and confirmed the Mediated Settlement Agreement and awarded the Bradfields $696,108.00 in damages. As a part of the Mediated Settlement Agreement and Consent Final Judgment, Horgo Signature and Winfree assigned their claims against Mid–Continent to the Bradfields. The Bradfields demanded that Mid–Continent satisfy the Consent Final Judgment, which it has not done.

The Bradfields then filed the instant action against Mid–Continent seeking damages in the principal amount of $696,108.00 and declaratory relief that Mid–Continent was obligated to defend Horgo Signature, and Winfree in the Underlying Act; that due to its actions and/or inactions Mid–Continent waived its right to control the defense and is therefore bound by the Mediated Settlement Agreement and Consent Final Judgment; and that Mid–Continent is obligated to satisfy the Consent Final Judgment.

At issue here are documents produced in response to a Subpoena directed to Edward G. Milgrim, P.A. ("Milgrim"), counsel of record in the underlying action for both Horgo Signature and Winfree. On October 22, 2013, Mid–Continent served on the Bradfields a Notice of Production of Non–Party, wherein it sought *inter alia* all documents and communications related to the mediation settlement agreement and consent final judgment. (Doc. 57–2). The Bradfields did not file an objection and instead served a request for copies. (Doc. 57–3).

In his initial response on November 7, 2013, Milgrim produced 113 pages and objected in part on grounds that Mid–Continent was seeking "documents containing confidential settlement communications." (Doc. 57–4). According to Mid–Continent's counsel, Milgrim agreed to amend his response and to produce the various drafts of the Mediated Settlement Agreement and Consent Final Judgment, along with email communications between Milgrim and counsel for the Bradfields. On November 18, 2013, Milgrim served an amended response no longer asserting that the documents contained "confidential settlement communications" and producing more than 1,000 pages of documents.

The Bradfields contend that it was discovered at the January 23, 2014 deposition of Richard Higo that certain documents were inadvertently produced by Milgrim that are protected by the work product and mediation privileges. (Doc. 49 at 1–2; Doc. 57–6, Deposition of Richard Higo, 117). Then, in a letter dated February 11, 2014, Milgrim advised counsel for Mid–Continent that his office had "inadvertently included various documents that are protected by the work product and media-

Enterprises, Inc."—not "Horgo Signature Homes, Inc." (Doc. 2, p. 54). The Court need

not resolve this dispute on the instant Motion.

tion privileges, including, without limitation, draft and unexecuted versions of the Settlement Agreement, unexecuted Mediation Agreement and correspondence related thereto."[3] Milgrim stated that "this inadvertent production does not waive these privileges, which inure to Bradfields as well as our client." Milgrim attached a list identifying 28 documents that he contended were covered by the privileges and requested that opposing counsel destroy them immediately. In the instant motion for protective order, the Bradfields seek the immediate return and/or destruction of those 28 documents identified in Milgrim's letter.[4]

## II. Discussion

Plaintiffs, as the party asserting privilege, bear the burden of proof. *See e.g., Tyne v. Time Warner Entertainment Co., L.P.,* 212 F.R.D. 596, 599 (M.D.Fla.2002). Plaintiffs, however, have failed to meet their burden. The Bradfields simply assert without any discussion that "[c]learly, the draft and unexecuted versions of settlement agreements and mediation agreements, as well as correspondence related thereto are privileged and work product." (Doc. 49 at 3).

■ With respect to work product, it is defined as material "prepared in anticipation of litigation or for trial." *See* Fed. R.Evid. 502(g)(2). Plaintiffs have failed to offer any explanation as to how drafts of settlement and mediation agreements were prepared "in anticipation of litigation." Likewise, to the extent Plaintiffs contend

that the documents are protected by attorney client privilege, they fail to even state that in their Motion. Accordingly, Plaintiffs have failed to meet their burden to establish that these documents are protected by either work product or attorney client privilege.

In addition, although Plaintiffs mention the mediation privilege[5] (and it is addressed at length in Mid–Continent's response), the Rule upon which Plaintiffs rely in their Motion–Federal Rule of Evidence 502(b)—only applies to attorney-client privilege or work product by its express terms. Accordingly, the 502(b) analysis is not applicable.

Assuming Plaintiffs are relying on the mediation privilege, it appears that several of the documents on Milgrim's list predate the February 21, 2014 mediation conference. At the deposition of Richard Higo (the principal of Horgo Signature and Horgo Enterprises, Inc.), counsel for the Bradfields "stipulate[d] that disclosure of any documents predating the mediation conference would not be covered by the mediation privilege because the mediation conference had not yet been conducted." (Doc. 57–6, Deposition of Richard Higo, 116–17). Accordingly, to the extent any of the documents on Milgrim's list predate the mediation conference, they are not protected by the mediation privilege.

■ Moreover, even if the mediation privilege (or any privilege for that matter) is applicable to documents identified on Milgrim's list, the Court finds that Plain-

---

**3.** Plaintiffs failed to attach the letter to their Amended Motion, but it is attached to the initial motion (Doc. 47, Exhibit A).

**4.** Although Mid–Continent claims to have filed all of the pertinent documents under seal, the Court has not attempted to identify each of the documents included on Milgrim's list.

**5.** Pursuant to Florida Statute § 44.405, all mediation communications shall be confidential, and participants shall not disclose a mediation communication to a person other than another mediation participant or a participant's counsel.

tiffs' assertion of the privilege in this case is barred by the sword and shield doctrine. It is well-established that "[u]nder the sword and shield doctrine, a party who raises a claim that will necessarily require proof by way of a privileged communication cannot insist that the communication is privileged." *Allstate Ins. Co. v. Levesque,* 263 F.R.D. 663, 667 (M.D.Fla.2010)(citing *GAB Bus. Servs., Inc. v. Syndicate 627,* 809 F.2d 755, 762 (11th Cir.1987)).

▮▮▮▮ When, as here, a party seeks to recover under a so-called *Coblentz* agreement,[6] the party must prove: "(1) coverage; (2) a wrongful refusal to defend; and (3) that the settlement was objectively reasonable and made in good faith." *Sinni v. Scottsdale Ins. Co.,* 676 F.Supp.2d 1319, 1324 (M.D.Fla.2009). Florida courts have held that a settlement cannot be enforced against the insurance carrier if it is unreasonable in amount or tainted by bad faith. *Steil v. Florida Physicians' Ins. Reciprocal,* 448 So.2d 589, 592 (Fla.App.Ct.1984). The party seeking to enforce the agreement bears the initial burden of going forward with the production of evidence sufficient to make a prima facie showing of reasonableness and lack of bad faith, however the ultimate burden of proof will rest on the insurance carrier. *See id.*

▮▮▮▮ If Plaintiffs introduce evidence as to the reasonableness of the Mediation Settlement Agreement and Consent Final Judgment and as to the lack of bad faith—as they must to prevail—Plaintiffs cannot then hide behind the shield of privilege to prevent Mid–Continent from effectively challenging such evidence.[7] Under Florida law, "a party who bases a claim on matter which would be privileged, the proof of which will necessitate the introduction of privileged matter into evidence, and then attempts to raise the privilege so as to thwart discovery, may be deemed to have waived the privilege ..." *GAB Business Services, Inc. v. Syndicate 627,* 809 F.2d 755, 762 (11th Cir.1987)(quoting *Home Insurance Co. v. Advance Machine Co.,* 443 So.2d 165, 168 (Fla.App.Ct.1983)). As such, the undersigned concludes that despite Plaintiffs' assertion of privilege, Mid–Continent is entitled to discovery regarding the Mediation Settlement Agreement and Consent Final Judgment so that it can effectively challenge the reasonableness of the settlement and whether it was reached in good faith.[8]

Accordingly, Plaintiffs' Amended Motion for Protective Order (Doc. 49) is **DENIED.**

▮▮▮▮

---

6. The term *"Coblentz* agreement" refers to a settlement agreement entered into between an insured and a claimant in order to resolve a lawsuit in which the insurer has denied coverage and declined to defend. *Trovillion Const. & Development, Inc. v. Mid–Continent Cas. Co.,* No. 6:12–cv–914–Orl–37TBS, 2014 WL 201678, at *3 n. 2. (M.D.Fla. Jan. 17, 2014)(citing *Coblentz v. Am. Sur. Co. of N.Y.,* 416 F.2d 1059 (5th Cir.1969)). In a traditional *Coblentz* agreement, the insured enters into a consent judgment establishing its liability and fixing damages; and assigns any cause of action it has against its insurer to the claimant. *See id.*

7. For example, at his deposition, Higo asserted the mediation conference privilege when asked if prior to entering into the settlement agreement he had seen an estimate prepared by the Bradfields' expert regarding the repair costs for the home. (Doc. 57–6, Higo Deposition at 127–28). Likewise, counsel for the Bradfields, Edward P. Jordan, II, asserted the mediation privilege when asked what documents were relied upon to reach the $671,050 figure in the consent judgment. (Doc. 57–7, Jordan Deposition at 31).

8. The Court is making no comment on the ultimate admissibility of such evidence.