NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

HOUSTON SPECIALTY INSURANCE
COMPANY,

        Appellant,

v.

ENOCH VAUGHN, individually, and as
parent and natural guardian of M.V.,
a minor; ALL FLORIDA
WEATHERPROOFING &
CONSTRUCTION, INC.; RICHARD
FULFORD; ROBERT MENDENHALL;
and JOSEPH PFLIEGER,

        Appellees.

Case No.  2D17-2713

Opinion filed August 10, 2018.

Appeal from the Circuit Court for Pinellas
County; Jack Day, Judge.

Robert M. Darroch and Chad W. Bickerton
of Goodman McGuffey LLP, Sarasota, for
Appellant.

Brad Salter of Salter, Healy, Bassett &
Rivera, St. Petersburg, for Appellee Enoch
Vaughn.

Weslee L. Ferron and Daniel A. Martinez of
Martinez Denbo, LLC, St. Petersburg, for
Appellee All Florida Weatherproofing &
Construction, Inc.

Scott K. Hewitt of Mandelbaum,
Fitzsimmons, Hewitt & Cain, P.A.,
Tampa, for Appellees Richard Fulford
and Robert Mendenhall.

No appearance for Appellee Joseph
Pflieger.


LaROSE, Chief Judge.

Houston Specialty Insurance Company appeals the trial court's order

dismissing its intervention in a tort lawsuit brought by Enoch Vaughn against All Florida

Weatherproofing & Construction, Inc., Richard Fulford, Robert Mendenhall, and Joseph

Pflieger.  We have jurisdiction.  See Fla. R. App. P. 9.030(b)(1)(A); see also YHT &

Assocs., Inc. v. Nationstar Mortg. LLC, 177 So. 3d 641, 642-43 (Fla. 2d DCA 2015)

(observing that the "the order denying intervention was a final order that could have

been appealed" (citing In re S.N.W., 912 So. 2d 368, 370 (Fla. 2d DCA 2005), for the

conclusion that "an order denying a motion to intervene was a final order subject to

appeal")).  Upon careful review of the record, and with the benefit of oral argument, we

affirm.

### Background

All Florida is in the business of pressure washing, roof coating, and

ancillary roof-related services.  Houston issued a commercial general liability insurance

policy to All Florida.  In 2012, while applying a protective coating to a mobile home's roof

for All Florida, Mr. Vaughn fell; he is now a paraplegic.  Individually, and on behalf of his

minor son, Mr. Vaughn sued All Florida, along with Richard Fulford, the company's

- 2 -

president, and Robert Mendenhall, a sales representative, in Pinellas County Circuit Court, alleging various tort claims.

Initially, Houston agreed to investigate and defend the claims. Houston later informed All Florida of a policy exclusion eliminating coverage for bodily injury to All Florida's employees, and an endorsement that would reduce the limits of any coverage if Mr. Vaughn was an independent contractor.

In May 2014, relying on the exclusion and endorsement, Houston filed a declaratory judgment action in the United States District Court for the Middle District of Florida seeking a determination as to Houston's duty to defend and indemnify All Florida. Houston also requested a declaration that Mr. Vaughn was an All Florida employee.

Shortly after filing the declaratory judgment action, Houston moved to intervene in the state court lawsuit. Houston wanted to submit special interrogatories and verdict forms relevant to Mr. Vaughn's employment status. Houston feared having to relitigate the entire tort lawsuit in its declaratory judgment action if a jury found in favor of Mr. Vaughn. Thus, Houston asserted that limited intervention was proper to avoid conflicting findings or verdicts and inconsistent results. All Florida and Messrs. Fulford and Mendenhall opposed intervention, insisting that permitting Houston to intervene as a party would potentially inflate any damages award. In September 2014, the trial court granted Houston's motion to intervene. The order specifically provided that "[a]ny party may file a motion to sever in the future in the event that circumstances change or that intervention otherwise subjects any party to unfair prejudice."

The state court lawsuit continued apace. In December 2014, All Florida and Mr. Fulford informed Houston that they had retained separate counsel and were

rejecting Houston's defense. Further, due to Houston's position on coverage, All Florida, Mr. Fulford, and Mr. Mendenhall negotiated an agreement with Mr. Vaughn to resolve his claims through nonbinding arbitration.[1] The agreement provided for entry of a final judgment in favor of Mr. Vaughn and against the defendants in an amount to be determined by nonbinding arbitration. Houston opposed the agreement. The trial court ordered all parties, including Houston, to participate in arbitration.

The arbitrator rendered an award in June 2015, finding that Mr. Vaughn was not an employee of All Florida. Further, the arbitrator found Mr. Vaughn to be eighty percent liable for his own injuries. The arbitrator awarded net damages to Mr. Vaughn of $2,131,087, individually, and $200,000 for Mr. Vaughn's minor son's claim for loss of consortium. Houston objected to the award. In July 2015, it filed a motion for

---

[1]This agreement, which the parties identify as a "Coblentz agreement," did not, as Houston contends, itself establish or otherwise constitute an admission of liability. Rather, the agreement provided for the amount of any final judgment to be determined through the arbitration over matters of liability and damages. See generally Perera v. U.S. Fid. & Guar. Co., 35 So. 3d 893, 899-900 (Fla. 2010) (defining a "Coblentz agreement" as "a settlement agreement but one that is entered into between the insured and the third-party claimant. The opportunity for a settlement without the agreement of the insurer traditionally has occurred where an insurer breaches its duty to defend, leaving the insured 'to its own devices' to settle the case or proceed to trial. In those circumstances, the insured is left unprotected and may enter into a reasonable settlement agreement with the third-party claimant and consent to an adverse judgment for the policy limits that is collectable only against the insurer." (citing Coblentz v. Am. Sur. Co. of N.Y., 416 F.2d 1059, 1065 (5th Cir. 1969))); Mid-Continent Cas. Co. v. Royal Crane, LLC, 169 So. 3d 174, 180 (Fla. 4th DCA 2015) ("A 'Coblentz agreement' refers to a negotiated consent judgment 'entered into between an insured and a claimant in order to resolve a lawsuit in which the insurer has denied coverage and declined to defend.' " (quoting Bradfield v. Mid-Continent Cas. Co., 15 F. Supp. 3d 1253, 1257 n.6 (M.D. Fla. 2014))); Rodriguez v. Sec. Nat'l Ins. Co., 138 So. 3d 520, 521 n.3 (Fla. 3d DCA 2014) ("A Coblentz agreement is a negotiated settlement in which the defendant agrees to a consent judgment and assigns, to the injured party, any cause of action the defendant had against the defendant's insurer. The injured party must thereafter 'prove coverage, wrongful refusal to defend, and that the settlement was reasonable and made in good faith.' " (quoting Chomat v. N. Ins. Co. of N.Y., 919 So. 2d 535, 537 (Fla. 3d DCA 2006))).

trial de novo. Mr. Vaughn moved to confirm the arbitration award and sought a final judgment in his favor. Mr. Vaughn also filed a motion to dismiss Houston's intervention, which Houston opposed. In February 2016, the trial court granted Houston's motion for trial de novo and denied Mr. Vaughn's motions.

Meanwhile, in September 2015, during the parties' imbroglio over arbitration, Houston filed a second declaratory judgment action in federal court. Houston sought a declaration that there was no coverage because All Florida and Messrs. Fulford and Mendenhall had failed to cooperate with Houston in defending the state court lawsuit. In September 2017, the district court entered summary judgment against Houston, concluding that it was estopped from asserting such a claim. Houston's appeal of the summary judgment is currently pending before the United States Court of Appeals for the Eleventh Circuit. See Houston Specialty Ins. Co. v. Vaughn, No. 17-14526 (11th Cir. filed Oct. 9, 2017).

While the state court lawsuit inched forward, a federal court jury returned a December 2015 verdict in the first declaratory judgment action, finding that Mr. Vaughn was an independent contractor at the time of the accident. Houston unsuccessfully appealed that judgment. See Houston Specialty Ins. Co. v. Vaughn, 726 Fed. Appx. 650 (11th Cir. 2018).

As a result of the federal court developments, Mr. Vaughn filed a second motion to dismiss Houston's intervention. Mr. Vaughn also filed another motion for entry of final judgment based upon the earlier arbitration award. The trial court entered a June 2017 order granting Mr. Vaughn's motion to dismiss Houston's intervention and denying his motion for entry of final judgment.

**<u>Analysis</u>**

The order on appeal reversed the trial court's prior order granting intervention.  Did the trial court err in dismissing Houston's intervention?  We think not.  Because the order before us dismisses Houston as a party, it is the functional equivalent of an order denying a motion to intervene.  "This court reviews an order denying a motion to intervene for an abuse of discretion."  <u>Harbor Specialty Ins. Co. v. Schwartz</u>, 932 So. 2d 383, 386 (Fla. 2d DCA 2006).  Houston contends that the trial court failed to properly consider its interests under the test recounted in <u>Union Central Life Insurance Co. v. Carlisle</u>, 593 So. 2d 505 (Fla. 1992).

Florida Rule of Civil Procedure 1.230 provides that "[a]nyone claiming an interest in pending litigation may at any time be permitted to assert a right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding, unless otherwise ordered by the court in its discretion."  Despite the rule's seemingly expansive language, intervention is not unrestrained.

The Florida Supreme Court established a two-part test for determining whether intervention is proper.  The trial court must first make a preliminary determination whether "the interest asserted is appropriate to support intervention."  <u>Carlisle</u>, 593 So. 2d at 507.

> [T]he interest which will entitle a person to intervene . . .
> must be in the matter in litigation, and of such a direct and
> immediate character that the intervenor will either gain or
> lose by the direct legal operation and effect of the judgment.
> In other words, the interest must be that created by a claim
> to the demand in suit or some part thereof, or a claim to, or
> lien upon, the property or some part thereof, which is the
> subject of litigation.

Id. (alteration in original) (quoting Morgareidge v. Howey, 78 So. 14, 15 (Fla. 1918)). The trial court must then exercise its sound discretion whether to permit intervention. Id. In this second part of the test, the trial court "should consider a number of factors, including the derivation of the interest, any pertinent contractual language, the size of the interest, the potential for conflicts or new issues, and any other relevant circumstance." Id. at 507-08. This two-step analysis is a compromise among the competing and fluid interests that are often at stake in tort litigation. See id.; Humana Health Plans v. Lawton, 675 So. 2d 1382, 1385 (Fla. 5th DCA 1996) ("In [Carlisle], the supreme court agreed with this court in [Southland Insurance Co. v. Abelove, 556 So. 2d 805 (Fla. 5th DCA 1990)] that an insurance company must be given a meaningful opportunity to assert and protect its interests but also agreed with the fourth district [in Union Central Life Insurance Co. v. Carlisle, 566 So. 2d 135 (Fla. 4th DCA 1990), approved, Carlisle, 593 So. 2d 505,] that an insurance company cannot be permitted to interfere with or participate in the trial between claimant and tort feasor.").

By way of example, we observe that an insurer's interest in protecting its subrogation rights may warrant intervention in its insured's tort litigation. See Harbor Specialty, 932 So. 2d at 386-87 (first citing Carlisle, 593 So. 2d at 505; then citing Provident Life & Accident Ins. Co. v. Prichard, 636 So. 2d 731, 733 (Fla. 4th DCA 1993); and then citing Abelove, 556 So. 2d at 806).

Carlisle and Abelove involved health insurers whose subrogation rights were directly impacted by the outcome of the underlying litigation. See Carlisle, 593 So. 2d at 507 ("In this case, Union Central is asserting an interest deriving from a contractual right to refund that is contingent upon recovery by the Carlisles from the defendants in the malpractice suit."); Abelove, 556 So. 2d at 805-06 ("This case

- 7 -

concerns the right of a subrogee, Southland Life Insurance Company, to intervene in its insured's action against putative tortfeasors allegedly responsible for the insured's injuries. . . . Clearly, Southland has a direct and immediate interest in the . . . litigation [because i]ts chances for recovering paid-out medical expenses stand or fall according to the success and character of [that] suit."). Further, in Provident, 636 So. 2d at 733, the Fourth District reversed an order denying an excess insurer's postjudgment intervention motion, where "Provident's interest had been protected by the plaintiff obtaining a judgment for past medical expenses, and it was only the post-judgment efforts of plaintiff and defendant to delete that award which threatened Provident's interests." Specifically, Provident's "interest was . . . directly jeopardized by the post-verdict settlement attempts by the parties . . . to eliminate Provident's potential recovery by deleting a portion of the award which had been pled and tried by the consent of both parties." Id. at 735.

No such subrogation right is obvious here, nor has Houston alerted us to one. Rather, we face a scenario similar to what we confronted in Harbor Specialty. In that case, we affirmed the trial court's order denying the insurer's motion to intervene, finding that that the insurer lacked the necessary "direct and immediate interest" in the injured motorist's tort action against the insured. Harbor Specialty, 932 So. 2d at 384-85. The insurer's attempt to intervene was based upon the possibility of a bad-faith lawsuit against the insurer. Id. at 386-87. We observed that the insurer had no subrogation interest in the action, and a final judgment against the insured would not automatically result in the filing of a bad-faith action. Id. at 387-88. Further, because the insurer was not a party to the tort action, it would not be precluded, in any

- 8 -

subsequent litigation, from relying on the release signed by the injured motorist in favor of Harbor Specialty. Id. at 388.

Similarly, Houston has no direct and immediate interest in the state court lawsuit. Houston's claimed interest is based upon the "[t]he fact that [Houston]'s intervention is dismissed would prevent [Houston] from being able to contest that final judgment" that may be entered in the future between Mr. Vaughn and All Florida and Messrs. Fulford, Mendenhall, and Pflieger. To be sure, however, no judgment has been entered below. If a judgment is entered, it would operate upon Mr. Vaughn and the All Florida defendants. They are the only parties with a direct and immediate interest; they stand to either gain or lose by direct legal operation of that judgment. At this point in the state court lawsuit, Houston has nary a direct or immediate interest. Rather, akin to the insurer in Harbor Specialty, Houston possesses a speculative or contingent interest that will come to fruition only if the trial court enters a judgment against the insured parties and then either Mr. Vaughn or the insured parties through separate legal action seek enforcement of the judgment against Houston through claims of breach of contract or insurer bad faith. Of course, Houston may then assert the legal defenses it deems appropriate. Cf. id. at 387-88 ("Although a bad faith action could be initiated by Schwartz on behalf of English as a result of the final judgment, the final judgment will not automatically result in such an action being filed. Furthermore . . . Harbor Specialty will have a forum in which it can raise its objections if it is in fact sued for bad faith.").

Houston's position, if accepted, would eviscerate Florida's nonjoinder statute, section 627.4136, Florida Statutes (2012):

> It shall be a condition precedent to the accrual or
> maintenance of a cause of action against a liability insurer by
> a person not an insured under the terms of the liability

- 9 -

insurance contract that such person shall first obtain a settlement or verdict against a person who is an insured under the terms of such policy for a cause of action which is covered by such policy.

§ 627.4136(1); see also Hazen v. Allstate Ins. Co., 952 So. 2d 531, 534 (Fla. 2d DCA 2007) ("Under the nonjoinder statute, an injured third party may not file a direct action against a liability insurer for a cause of action covered by a liability insurance policy without first satisfying either one of two conditions precedent: (1) obtaining a settlement against the insured or (2) obtaining a verdict against the insured."). The statute dictates that an injured person lacks an interest in the tortfeasor's liability policy until a judgment is entered against the insured. § 627.4136(2); see also State Farm Fire & Cas. Co. v. Nail, 516 So. 2d 1022, 1022 (Fla. 5th DCA 1987) ("[Section 627.4136] reflects the public policy that an injured person has no beneficial interest in a liability policy prior to obtaining a judgment against an insured under that policy."). "The legislative intent behind the statute is to ensure that the availability of insurance has no influence on the jury's determination of the insured's liability and damages." Gen. Star Indem. Co. v. Boran Craig Barber Engel Constr. Co., 895 So. 2d 1136, 1138 (Fla. 2d DCA 2005); see, e.g., Nail, 516 So. 2d at 1022-23 (quashing the trial court's order consolidating a negligence action against the insurer with the insurer's declaratory judgment action seeking a determination of its rights and obligations under the policy as violative of the nonjoinder statute). As of yet, Mr. Vaughn has obtained no judgment.

If the possibility of owing up to the policy limits based upon entry of an adverse judgment was itself a sufficient basis to allow intervention, insurers would be permitted the unhindered and unfettered opportunity to intervene in innumerable tort cases. That is exactly what Houston wants; it seeks to interject itself directly into Mr.

Vaughn's tort lawsuit. We cannot countenance such a result in light of the legislature's intent to prevent the introduction of such prejudicial information from being introduced to the jury. See Nail, 516 So. 2d at 1023 (observing that arguments for judicial economy and the "very real possibility of inconsistent verdicts . . . do not overcome the danger that jurors may be influenced if they know the defendant has liability insurance coverage"). After all, courts must continually be concerned that insurance coverage not be introduced to the jury because of its potential to adversely impact the issues of liability and damages. Gold, Vann & White, P.A. v. DeBerry, 639 So. 2d 47, 54 (Fla. 4th DCA 1994) ("It is hornbook law that a jury should not learn of the existence of insurance coverage or insurance limits." (citing Beta Eta House Corp. v. Gregory, 237 So. 2d 163, 165 (Fla. 1970), for the proposition that the "existence or amount of insurance has no bearing on the issue of liability and damages")).

We are unmoved by Houston's claim that it possesses a sufficient interest in the state court lawsuit to justify intervention. Houston's asserted basis for intervention below was to resolve overlapping factual disputes impacting tort liability and insurance coverage; namely, (1) Mr. Vaughn's status as an employee or independent contractor of All Florida; and, (2) Mr. Mendenhall's status as an employee or independent contractor of All Florida. Houston posits that resolution of these factual disputes are necessary and material to Mr. Vaughn's negligence claims and to the affirmative defenses raised by All Florida and Messrs. Fulford, Mendenhall, and Pflieger, including, specifically, the workers' compensation immunity defense.

But, Houston elected to litigate those factual disputes in federal court. Such a decision is not unusual. See Nail, 516 So. 2d at 1023 ("Clearly, the concerns [for inconsistent verdicts] that were the basis for the trial court's determination to grant

- 11 -

joinder in this case are not unique, and could occur in any similar situation in which there is a dispute regarding insurance coverage."). Nor do we begrudge Houston's decision to do so. But, Houston has received adverse judgments in both federal declaratory judgment actions, one of which has already been affirmed on appeal. Houston must now live with the consequences. Cf. Harbor Specialty, 932 So. 2d at 388 ("Harbor Specialty's argument that it would be precluded from relying on the release by the doctrines of res judicata or collateral estoppel is without merit because Harbor Specialty was not a party to the tort action. Both doctrines require the identity of persons and parties to the actions." (citing Campbell v. State, 906 So. 2d 293, 294 (Fla. 2d DCA 2004))).

## Conclusion

In light of the interests asserted by Houston, within the context of the long and ponderous litigation history surrounding the state court lawsuit, we cannot say that the trial court's decision (to reverse its earlier decision granting intervention) constitutes an abuse of discretion. See Canakaris v. Canakaris, 382 So. 2d 1197, 1203 (Fla. 1980) ("If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion. The discretionary ruling of the trial judge should be disturbed only when his decision fails to satisfy this test of reasonableness.").

Affirmed.

KHOUZAM and ROTHSTEIN-YOUAKIM, JJ., Concur.

- 12 -